[No. 16235.    Department One.    March 14, 1921.]

DELBERT B. RECTOR, *Respondent*, v. CHERRY VALLEY TIMBER COMPANY, *Appellant*.[1]

MASTER AND SERVANT (20-1)—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACT—SOLDIERS IN SERVICE. A soldier, serving in the Spruce Production Corps as a logger, is not in involuntary service, but is a "workman" within the workmen's compensation act, Rem. Code, § 6604-3, and cannot maintain an action against the employer for personal injuries sustained in an extra-hazardous employment in the scope of the act.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered May 22, 1920, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a soldier serving in the spruce production corps in a logging camp. Reversed.

*Chadwick, McMicken, Ramsey & Rupp* and *Cooley, Horan & Mulvihill,* for appellant.

*Charles A. Turner, Noah Shakespeare,* and *Louis A. Merrick,* for respondent.

MACKINTOSH, J.—On the 16th day of May, 1917, respondent was a soldier in the United States army, and was transferred from the unit in which he was serving to the spruce production corps, it appearing from information obtained by the respondent's superior of-

[1]Reported in 196 Pac. 653.

ficers that he was an experienced logger. On December 26, 1917, he was ordered, with others in the same corps, to proceed to Everett, Washington, and to report at the logging camp of the appellant. This he did and was put to work under one of appellant's foremen, and on May 16, 1918, he was injured, for which he seeks recovery of damages in this action. He was awarded damages by verdict of the jury, from judgment based upon which this appeal has been taken.

In furtherance of the production of material for shipbuilding and airplane construction, Congress organized the spruce production division; and to the appellant and those similarly situated who were engaged in logging, members of this division were furnished in order to meet a deficiency in labor, this work being participated in by the government as part of its war activities. The respondent, and those working under similar conditions, were to, and did, receive the same wages that were paid to civilian employees, and were carried on the same pay roll and subject to the same superintendence. These soldiers were under the direction of the foremen while at the work of logging, though they came to the camp as a military company with a complete line of officers and were under military discipline. If the soldier did not fit into the work to which he was assigned, or did not work, these delinquencies were reported to the superior military officer, who could return the man to some other military service.

It is the respondent's contention that he was not a workman employed by the appellant, and is not compelled to look to the workmen's compensation law for his remuneration for his injury, but that he could maintain this common law action upon the theory that his service was involuntary and the state compensation act

had no application to him. The question, then, is to determine whether the appellant's relation to the respondent was that of a workman or that of an involuntary servant.

It is abhorrent to every idea of our institutions and the methods necessary for their preservation that a member of the army should be considered as being in involuntary servitude, and this is true whether his entrance into the army was by voluntary enlistment or through the method adopted in the late war under the selective service act. The mental attitude of a soldier does not affect the nature of his service. In whatever way he views his presence in the army, it must be viewed by all others as voluntary service in the performance of the duty which he owes to the government.

"Finally, as we are unable to conceive upon what theory the exaction by government from the citizen of the performance of his supreme and noble duty of contributing to the defense of the rights and honor of the nation, as the result of a war declared by the great representative body of the people, can be said to be the imposition of involuntary servitude in violation of the prohibitions of the Thirteenth Amendment, we are constrained to the conclusion that the contention to that effect is refuted by its mere statement." *Selected Draft Cases,* 245 U. S. 366.

The respondent, as a member of the army, was not impressed into involuntary servitude, and wherever he was called upon to perform service in the furtherance of the interests of his country in the attempt to prosecute the war successfully, his status was the same, whether he was called upon to work in the woods of Washington or to fight in the fields of France; and when he was ordered to the camp of the appellant, his appearance there was voluntary. Being voluntarily in the army and under its discipline, all acts which were

done under military orders were voluntarily done; and when the respondent was ordered to the appellant's camp, his appearance there was as voluntary as though he had applied for employment at a public employment agency and had been informed that there was a position which he might obtain by going to the appellant's works.

Having thus, in contemplation of law, voluntarily undertaken work as a logger, the fact that he remained a member of a military organization and subject to its control in everything else except the matter of his work, would have no influence in determining his status. Those were war times and every citizen, whether a member of the army or not, had curtailed many of the privileges of ordinary civil life, and the respondent had, in furtherance of his duty to his country, agreed that military might be substituted for civil authority over him. There was nothing anomalous in this position of the respondent, for every man in the employ of another is subject to two authorities— the authority of the employer and the authority of the government; he is alike subject to the orders of his employer as to the work upon which he is engaged, and he is amenable to the civil authority in regard to his conduct in all relationships. In this case, for civil authority had merely been substituted military authority, and this substitution had taken place as a result of his voluntary act.

The respondent can gather little comfort from some cases holding that, where convict labor is contracted to private employers, such labor is involuntary. Although there may be a question if even convict labor, in contemplation of law, is involuntary, and assuming that these cases correctly state the rule, yet the situation of a soldier and that of a convict is not the same, in spite

of respondent's efforts to seek refuge in those decisions discussing convicts. In the convict labor cases, the appearance of the convict in the employ of a private person was not a voluntary act, and he was sent there against his will and despite his protest. While in the case of the soldier, by the voluntary act of joining the army, he agreed to comply with every lawful order of his superior officers; and when that order was to engage in work designed to assist in the prosecution of the war, as provided by Act of Congress, his appearance was voluntary. In any event, the respondent comes under the definition of a workman laid down by the statute in relation to the compensation of workmen. By Laws of 1911, p. 347, § 3, ch. 74, a workman is defined as:

"Workman means every person in this state, who, after September 30, 1911, is engaged in the employment of an employer carrying on or conducting any of the industries scheduled or classified in section 4, whether by way of manual labor or otherwise, and whether upon the premises or at the plant or, he being in the course of his employment, away from the plant of his employer." [Rem. Code, § 6604-3.]

Under § 4, logging is included.

There seems little room for arguing that the respondent does not fall within the scope of this act. It is true that, in 1911, the legislature, by its act, did not specifically cover a person in the respondent's position. But the legislature intended, and so stated, that, after the passage of that act, all the common law system covering the remedies of workmen against employers for injuries should be abolished, and the state, in the exercise of its sovereign power, removed all phases of the matter from private controversy and afforded sure and certain relief for workmen engaged in extra-hazardous

work, and, excluding every other remedy, provided the compensation set out in the act, Rem. Code, § 6604-1.

It was the intention of the legislature to protect every one engaged in work in any of the extra-hazardous industries of the state, whether he be soldier or civilian, that is as to matters outside of his employment as a workman, whether he be subject to either the military or ordinary civil and criminal restraints and regulations, and the act made it impossible for either employer or employee to exempt themselves from its operation. The act, as plainly as it is possible to express the idea, brings within its scope every worker in an industry which the act declares to be hazardous. The legislature had this power and could have, by express words, referred to the exact situation obtaining in this case; and the fact that it did not use the express words but used the broadest and most forcible of general expressions, does not alter the situation. The appellant would never have agreed to the employment of respondent on the basis of the non-applicability of the workmen's compensation act. To our minds it is clear that the respondent was a workman within the definition of the act, and, as such, is not entitled to prosecute this action.

The judgment is reversed and the action dismissed.

PARKER, C. J., BRIDGES, FULLERTON, and HOLCOMB, JJ., concur.