356 P.2d 226

In re Truman G. SINES, Sr., Deceased.

Moreeta W. SINES, Surviving Widow on her own behalf and on behalf of decedent's minor dependents, Claimant-Respondent,

v.

Ray BRUMFIELD, Employer, and Industrial Indemnity Company, His Surety, Defendants-Appellants.

No. 8938.

Supreme Court of Idaho.

Oct. 25, 1960.

Brown & Peacock, Kellogg, for appellant.

Cope R. Gale, Moscow, for respondent.

SMITH, Justice.

Appellant Ray Brumfield, employer, will be referred to as the appellant.

For a time prior to and on August 2, 1959, the relationship of principal and independent contractor existed between appellant and Potlatch Forests, Inc., under a logging contract; Jay Brumfield, appellant's brother, and Truman G. Sines, Sr., were appellant's employees,—Brumfield as woods superintendent and Sines as a jammer operator.

Under a portion of his logging contract, which he deemed to be obligatory, appellant entered into an arrangement with Potlatch Timber Protective Association (hereinafter called the Association) for fire protection of timber in the area of the logging operations. Appellant testified concerning the fire plan under such arrangement, as follows:

"Q. If the Association called you up, and you bring a crew up, you turned them over to them to fight the fire? A. Yes.

"Q. They are supervising the crew during the fighting of the fire? A. Yes.

\* \* \* \* \* \*

"Q. When your men go on these jobs, after you take them out on the fire, who is in charge? A. Somebody from the Association.

"Q. They direct the fire fighting operations? A. Yes, and take care of the board and arrangements for them.

"Q. They tell you what they want in the way of men and material and you get it? A. Yes.

"Q. And you order your men out? A. Yes.

"Q. At least you tell them they had better go? A. Yes.

"Q. And you are required to fight fire by the people you enter into the logging contract with? A. Yes.

\* \* \* \* \* \*

"Q. \* \* \* who pays these men out on the fire? A. The Association.

"Q. Did they pay your men out on this fire that we are talking about? A. Yes.

"Q. Did they furnish you a schedule of payments for men on the fire?

\* \* \* \* \* \*

"A. Yes.

"Q. How is your equipment paid for? A. It is separate—they have rates per hour.

"Q. They pay you for the use of your equipment? A. Yes, and the operator."

Dwain Space, employed by the Association as district fire warden, was the overseer in charge of the fire fighting activities in the area to which Sines was heading the early morning of August 2, 1959. It was to him that logging contractors were required to report in bringing extra men to the fire.

August 1–2, 1959, Jay Brumfield was in charge of the logging operations in the absence of appellant.

On August 2, 1959, at about 1:00 o'clock a. m., Jay Brumfield awakened Mr. and Mrs. Sines at their home. Mrs. Sines went to the door. Mr. Brumfield testified as to his conversation:

"A. I told her we were on fires at the camp 40 area and that we needed some relief for the men that had been on the fire all afternoon and all night, and that we wanted him and his crew [Truman Sines and his jammer crew] and whatever men he had available to come up to Clarkia and I would meet him there at Clarkia. I believe the time was between two and three o'clock, I told him to be there."

Mrs. Sines testified:

"A. I told him [Truman Sines] that Jay had come and wanted him to get the boys and the other jammer crew and meet him at Clarkia at 2:00 o'clock. \* \* \* He said he wished they hadn't called him—that he was tired and he hated to get up."

Mr. Sines then roused his two sons, members of his jammer crew, stating they had to meet Jay Brumfield at Clarkia at 2:00 o'clock, to fight fire. They traveled in a pickup truck, the father driving. When about two miles from Clarkia, the pickup ran off the road into a tree, inflicting severe injury and resultant immediate death of Sines. The area of the fire was some 20 to 25 miles further on from Clarkia.

Respondent made and filed a claim for workmen's compensation death benefits on

behalf of herself and decedent's minor dependents directed against appellant employer and his compensation surety, asserting that decedent's death resulted from personal injury caused by an accident arising out of and in the course of his employment by appellant. This appellants denied, and affirmatively pleaded that decedent at the time of his death was an employee of Potlatch Timber Protective Association.

Ancillary to their defense appellants moved the Board to order the Association and its compensation surety to be made parties to the proceeding. The Board, after an investigational hearing, denied the motion.

Respondent did not, nor did anyone on her behalf (I.C. § 72–402), make claim for workmen's compensation death benefits against Potlatch Forests, Inc., or Potlatch Timber Protective Association.

Appellants' defense is to the effect that Jay Brumfield, in directing Sines to go on a special mission the early morning of August 2, 1959, to fight a forest fire, was acting as agent for the Association; that therefore, at the time of his death, Sines was not in the employ of appellant, Ray Brumfield, but was in the employ of the Association.

The Board, upon hearing the matter on its merits, found that Truman G. Sines, during the early morning of August 2, 1959, when he came to his death, was in the employ of appellant Brumfield, and that Sines had not as yet been "loaned" to the Association.

The Board made an award of workmen's compensation death benefits in favor of respondent widow and the minor dependents of decedent Sines. Appellants have appealed therefrom.

Appellants, by their assignments of error, raise two questions, first: Insufficiency of the evidence to sustain the award, and second: Error of the Board in denying appellants' motion to join Potlatch Timber Protective Association and its compensation surety, as defendants in the proceeding.

Before one can become the employee of another, the knowledge and consent of the employer, express or implied, is required. Seward v. State Brand Division, 75 Idaho 467, 274 P.2d 993. An award of compensation depends on the existence of employer-employee relationship. Moon v. Ervin, 64 Idaho 464, 133 P.2d 933; Brewster v. McComb, 78 Idaho 228, 300 P.2d 507. Under the workmen's compensation law the relationship of employer and employee depends upon a contract of hire which may be either express or implied. Lockard v. St. Maries Lumber Co., 76 Idaho 506, 285 P.2d 473; Shamburg v. Shamburg, 153 Neb. 495, 45 N.W.2d 446.

We approach the first question, whether the evidence is sufficient to sustain the award.

While the requirements of the contract were twofold, first, that appellant perform certain logging operations in causing logs to be delivered to his principal, and second, that he loan men and equipment to the Association for fire fighting purposes, nevertheless as to both such requirements appellant appears to have been contractually responsible only to his principal, Potlatch Forests, Inc.

The record is devoid of any showing of knowledge on the part of Mr. Sines that he was to be loaned by his immediate employer to the Association, and, as of the time of his death, the record fails to show the creation of any express or implied contractual relationship between Mr. Sines and either his employer's principal, Potlatch Forests, Inc., or the Association; nor had he as yet been loaned. Privity of contract at that time is shown to have existed only between him and appellant, his immediate employer.

The legislature intended to require the principal, his independent contractor and any subcontractor under the independent contractor, to pay workmen's compensation to any workman injured on the job whether employed by the owner or lessee of premises or other person who is the operator of the business there carried on, I.C. § 72–1010, or employed by the principal, the independent contractor or subcontractor, I.C. § 72–811; Hiebert v. Howell, 59 Idaho 591, 85 P.2d 699, 120 A.L.R. 388. The law therefore regards the owner or proprietor of the premises, who here was the principal, Potlatch Forests, Inc., as the statutory employer, liable for compensation had appellant, independent contractor and immediate employer, not complied with the provisions of the workmen's compensation law requiring coverage for his employees. I.C. § 72–811.

The relationship of the Association to Potlatch Forests, Inc., is not shown by the record; therefore, we do not decide whether the Association also may have been a statutory employer.

Appellant maintains that, inasmuch as the Potlatch Timber Protective Association directly paid the wages of those constituting the fire crews, including appellant's crew, for services in fighting the fire, such should be accepted as a conclusive showing that the Association was the employer of Mr. Sines, who, when injured, was on his way by special mission to fight a fire.

■ While payment of services constitutes a circumstance in determining the direct employer, such is not controlling of the relationship. Pinson v. Minidoka Highway Dist., 61 Idaho 731, 106 P.2d 1020; Merrill v. Duffy Reed Const. Co., 82 Idaho 410, 353 P.2d 657. "The general test is the *right* to control and direct the activities of the employee." Pinson v. Minidoka Highway Dist., supra [61 Idaho 731, 106 P.2d 1022]; Merrill v. Duffy Reed Const. Co., supra.

In Shamburg v. Shamburg, 153 Neb. 495, 45 N.W.2d 446, 450, the rule is stated:

"While there is considerable conflict in the decisions, it appears that according to the great weight of authority in the United States, the general test in determining whether an employee is a servant of his original master, or of the party to whom he has been furnished, is whether in the particular service which he is engaged to perform he continues to be liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired."

This rule of necessity presupposes completion of the new contractual relationship between the employee and the special or temporary employer. It is only when the employee *"comes under the direction and control of the person to whom his services have been furnished, the latter becomes his temporary employer."* (Emphasis supplied.) Pinson v. Minidoka Highway Dist., 61 Idaho 731, 106 P.2d 1020, 1022.

Appellant employer as well as the Association's district fire warden and overseer both agreed that the Association controls the activities of a logging contractor's loaned employees only when the employees are turned over to the Association for the purpose of fighting a fire; only after the logging contractor has reported in his crew to the overseer or fire warden of the Association does the Association direct the workmen in the fire fighting operations.

The evidence is sufficient and substantial in the aforementioned respects and does sustain the award of the Industrial Accident Board. In re Linzy, 79 Idaho 514, 322 P.2d 330. In so holding we dispose of appellants' second contention, and hold that the Board did not commit error in denying appellants' motion to join the Association and its compensation surety as defendants in this proceeding. This is by reason of the primary liability of appellant, as general employer, and his surety for payment of workmen's compensation benefits growing out of the death of Mr. Sines under the circumstances hereinbefore related.

The award of the Industrial Accident Board is affirmed.

Costs to respondent.

TAYLOR, C. J., and KNUDSON, McQUADE and McFADDEN, JJ., concur.