796 P.2d 516

Iris YOUNT, Claimant–Appellant,

v.

BOUNDARY COUNTY, Employer, and State Insurance Fund, Surety, Defendants–Respondents.

No. 18021.

Supreme Court of Idaho.

Aug. 14, 1990.

Cooke, LaManna, Smith & Cogswell, Priest River, for claimant-appellant. Nicholas M. LaManna, argued.

Cox & Davis, Coeur d'Alene, and M. Karl Shurtliff (argued), Boise, for defendants-respondents.

BISTLINE, Justice.

## INTRODUCTION

The Commission, noting that this was a case of first impression in Idaho, turned to other jurisdictions for guidance. Observing that it had found only one case which compensated a juror, and that nine other states had determined that jurors are not employees within the purview of workers' compensation law, it concluded that I.C. § 72–205 is substantially similar to the statutory provisions of the states which denied compensation and ruled that an Idaho juror is not covered, as there is no contract of hire either express or implied. R. 48. The Commission did not favor us with any analysis of the case law upon which it relied, except by reference to the names of the states: Michigan, Maryland, Louisiana, North Carolina, New Jersey, Massachusetts, Florida, New Mexico, and Colorado. It specifically cited to the one case which allowed an injured juror to recover. *Industrial Comm'n v. Rogers*, 122 Ohio 134, 171 N.E. 35 (1930). All ten of the cases date back to the era when the various state legislatures decided to provide workers with compensation irrespective of the employees' negligence—such being the *quid pro quo* for eliminating the previous remedy of seeking a tort recovery from employers. Sure and certain relief was the promise of the Workers' Compensation Act.

Conceding that the Commission accurately observed that the numerical weight of authority, nine to one, preponderates in favor of denying coverage, it is incumbent on this Court to analyze case

law precedent, and determine whether what has been referred to as the overwhelming weight of authority is persuasive. Our Idaho Workers' Compensation Act is to be liberally construed in order to implement its beneficial purposes. *Jones v. Morrison–Knudsen Co.*, 98 Idaho 458, 567 P.2d 3 (1977); *Hattenburg v. Blanks*, 98 Idaho 485, 567 P.2d 829 (1977). With due deference to the Commission's approach, we will decide the issue in accordance with the foregoing precept, in accordance with applicable Idaho statutory law, and with an analysis of the case law precedent of the ten states which have addressed the issue—the latter being that to which we shall first direct our attention.

## I. OTHER STATES' PRECEDENTS

■ An overview of the nine cases denying coverage illustrates that after the first case denying coverage was followed by a second such holding, there was a readily observable propensity toward becoming "aligned with the great weight of authority." The most recent case from the nine jurisdictions mentioned by the Commission is *Jeansonne v. Parish of E. Baton Rouge*, 354 So.2d 619 (La.Ct.App.1977). There the First Circuit Court of Appeals of Louisiana cursorily considered that a juror does receive compensation for services rendered, but immediately watered down its effort by noting its own holding in *Parker v. State*, 353 So.2d 333 (La.Ct.App.1977), that payment of some compensation to prisoners for their labor does not make them into state employees.[1]

The Louisiana court made no mention of the single contrary but well-reasoned analysis and holding of the Ohio Court of Appeals, *Industrial Comm'n v. Rogers*, 34 Ohio App. 196, 170 N.E. 600 (1929), *aff'd* by

opinion of the Ohio Supreme Court, 122 Ohio St. 134, 171 N.E. 35 (1930). Upon analyzing the *Jeansonne* rationale it is found to be without substance. The Louisiana court candidly stated that:

> In reaching our conclusion that a juror is not covered by our Workman's Compensation Law, we note that *such result has been reached by the overwhelming majority of states deciding the question. Metropolitan Dade County v. Glassman*, 341 So.2d 995 (Fla.1976); 1–A Larson, The Law of Workmen's Compensation, § 56.35 (1973).

*Jeansonne*, 354 So.2d at 619 (emphasis added). We find no help from Louisiana, but do note that it recited the statutory provision that the workers' compensation law of that state "shall apply to every person in the service of the [a] state or political subdivision thereof." 354 So.2d at 620.

Decided fourteen months earlier than *Jeansonne* was Maryland's *Lockerman v. Prince George's County*, 281 Md. 195, 377 A.2d 1177 (1977), the disposition of which did not require much effort on the part of the Court of Appeals:

> Our inquiry therefore reduces itself to whether those (normal contractual) incidents (of the employer-employee relationship) are present in the relationship of a juror with either the State or the county. . . . We think it clear that they are not and conclude that an injured juror is not an employee entitled to receive compensation, *aligning ourselves with six of the seven jurisdictions which have decided the issue.*

377 A.2d at 1181–82 (emphasis added). Perhaps in a desire to fortify its "alignment" *ratio decidendi*, the Maryland court obediently set out the six citations of the cases to which it adhered. Apparently out

---

1. The court's opinion in *Parker* was not an in depth effort. Twenty lines long, it recited that for his work inmate Parker was paid two cents per hour. It found "persuasive" the reasoning of *Jones v. Houston Fire & Casualty Ins. Co.*, 134 So.2d 377 (La.Ct.App.1961), where a plaintiff-inmate crippled his hand while working on a cotton ginning machine at the penitentiary: "In *Jones* the court held that an inmate receiving payment for work at a state penitentiary cannot be considered as an employee of the State for

purposes of workmen's compensation benefits where he suffers injuries while engaged in the work program." *Jones*, too, was receiving two cents per day, and had been sentenced to confinement at hard labor. He was obliged to work with or without the two cents. Such cases as *Parker* and *Jones* have no bearing whatever relative to jury service. Obviously the Louisiana court, in struggling against presenting a "me-too" rationale, was willing to use anything available as a basis for denying benefits.

of courtesy, it also provided the citation to, but no comment on, the Ohio Supreme Court's *Rogers* case.[2] Obviously the Maryland court was of the same view as the Louisiana court, namely, better to follow the aged adage that there is strength and safety in numbers.

The Maryland court did venture into a general analysis of the prerequisite of employment as essential to eligibility for compensation benefits, as had been stated by earlier members of the court in 1951:

> Our predecessors recognized the principles we now reiterate more than a quarter-century ago, when they opined: 'Of course, in order to warrant payment of compensation under the Workmen's Compensation Act, it is essential that there should have existed at the time of the injury (an express or implied) contract of employment between the alleged employer and the injured workman.' *Sun Cab Co. v. Powell,* 196 Md. 572, 579, 77 A.2d 783, 786 (1951).

*Lockerman,* 377 A.2d at 1180.

*Hicks v. Guilford,* 267 N.C. 364, 148 S.E.2d 240 (1966), was cited by the *Lockerman* court. Discussing an issue of first impression, *Hicks* took due note of the Ohio *Rogers* case, and the opposite conclusions of the courts of Colorado and New Mexico before declaring that:

> Since in this jurisdiction a juror is not an employee, the North Carolina Workmen's Compensation Act does not apply to an injury sustained by a juror in the course of his or her service as such. Consequently, the Industrial Commission was without jurisdiction in this matter. The judgment of the superior court is, therefore, reversed, and the award of the Industrial Commission is vacated.

*Hicks,* 148 S.E.2d at 244. The North Carolina Supreme Court was careful to observe that the Ohio holding was that "a juror is within the coverage of the Workmen's Compensation Act *of that state,*" 148 S.E.2d at 244 (emphasis added), and the Colorado and New Mexico conclusions were reached "as to the statutes of *those states.*" *Id.* The North Carolina Supreme Court was the first to engage in enlightening discussion of the opinion in *Rogers* and the two contrary results in New Mexico and Colorado. Of significance and helpful to our review, the North Carolina Supreme Court quite adequately vitiates the conclusion advanced by the Idaho Industrial Commission in Part III of its decision,[3] that "Claimant was more like an independent contractor than an employee while she

---

2. The Maryland court also declared its awareness that the Maryland Workmen's Compensation Act is to be liberally construed. *Lockerman,* 377 A.2d at 1182, n. 5.

3. The Commission's Findings, Conclusions, and Order, Part III, states in full:

> The ultimate question in finding an employment relationship is whether the employer assumes the right to control the time, manner, and method of executing the work of the employee, as distinguished from the right merely to require certain definite results in conformity with their agreement. Four factors are traditionally used in determining whether a 'right to control' exists, including, (1) direct evidence of the right; (2) the method of payment; (3) furnishing major items of equipment; and (4) the right to terminate the employment relationship at will and without liability. *Burdick v. Thorton [Thornton],* 109 Idaho 69 [869] [712 P.2d 570] (1985); *Ledesma v. Burgeson,* 99 Idaho 555 [585 P.2d 965] (1978); *Tuma v. Kosterman,* 106 Idaho 728 [682 P.2d 1275] (1984); and *Sines v. Sines,* 110 Idaho 776 [718 P.2d 1214] (1986). Applying

the foregoing test to the instant case reveals the county had no right to control the method or manner of claimant performing her duties and was interested in the result only. Secondly, the method of payment is more indicative of an independent contractor relationship than that of an employee, as Claimant was only paid $10.00 per day for her services and no taxes were deducted therefrom. The third test, furnishing major items of equipment, is not indicative of either an employee or independent contractor, as there were no major items of equipment provided. The last prong of the test is that Claimant could not terminate her employment relationship at will nor without liability, and once called to jury duty the county could not terminate her employment once her services as a juror began absent showing some kind of bias or partiality. *Therefore, the Commission concludes the weight of the evidence is that Claimant was more like an independent contractor than an employee while she served on jury duty and hence is not entitled to worker's compensation benefits.*

(Emphasis added.)

served on jury duty and hence is not entitled to worker's compensation benefits." R. 49.

The *Hicks* opinion provides us with that state's statutory definition of employee, which is on a par with Idaho's, and then continues on to say:

This definition adds nothing to the common law meaning of the term 'employee.' *Hayes v. Board of Trustees of Elon College* [224 N.C. 11, 29 S.E.2d 137], *supra.* As was said by Stacy, C.J., in *Hollowell v. North Carolina Department of Conservation and Development*, 206 N.C. 206, 173 S.E. 603, 'The sum of the whole matter is that before the provisions of the Workmen's Compensation Act are called into play, the relation of master and servant, or employer and employee, or some appointment, must exist, and this is the initial fact to be established.'

In *Scott v. Waccamaw Lumber Co.*, 232 N.C. 162, 59 S.E.2d 425, Ervin, J., speaking for the Court, said:

The question whether one employed to perform specified work for another is to be regarded as an independent contractor, or as an employee within the operation of the Workmen's Compensation Act is determined by the application of the ordinary common-law tests. * * * The test to be applied in determining whether the relationship of the parties under a contract for the performance of work is that of employer and employee, or that of employer and independent contractor is whether the party for whom the work is being done has the right to control the worker with respect to the manner or method of doing the work, as distinguished from the right merely to require certain definite results conforming to the contract. If the employer has the right of control, it is immaterial whether he actually exercises it.

It does not necessarily follow that one who is not an independent contractor is an employee within the coverage of the Act. One performing work or rendering services may not fall into either category. Thus, a prisoner, who certainly is not an independent contractor, is not an employee as defined in G.S. § 97–2(b), though prisoners are now specifically brought within the Act to a limited extent by another provision of the statute. *Lawson v. North Carolina State Highway and Public Works Commission*, 248 N.C. 276, 103 S.E.2d 366.

*One may be an employee*, within the meaning of the Workmen's Compensation Act, *though his employment is involuntary and under the compulsion of legal process.* Thus, in *Moore v. State*, 200 N.C. 300, 156 S.E. 806, one deputized by a forest warden to assist him in subduing a forest fire, and injured by an accident in the process of rendering such service, was held entitled to compensation under the Act. Similarly, in *Tomlinson v. Town of Norwood*, 208 N.C. 716, 182 S.E. 659, one deputized by a police officer to assist him in making an arrest was held entitled to compensation under the Act for injuries received in so doing. It will be observed that in each of these situations the person, so called into the public service, was under the direction and control of the officer, so deputizing him, as to the manner in which his service was to be rendered.

*Hicks*, 148 S.E.2d at 243 (emphasis added).

Shortly after *Hicks* the New Jersey Division of Workmen's Compensation denied benefits to a state employee who was called as a juror. As with Mrs. Yount's claim, the claim of Mrs. Silagy was submitted on a stipulation of facts and a request for a court determination of law. The Mercer County Court affirmed the denial of her claim, both as against the state and as against the county. *Silagy v. State & Mercer County*, 101 N.J.Super. 455, 244 A.2d 542 (1968). As to the defendant state, the holding was that Silagy's accident was not caused out of and in the course of her employment. The court acknowledged the *Rogers* decision from Ohio, without analysis or comment, in favor of its observation that:

[I]t has been held uniformly that a juror is not an employee of the county which summons him for duty. *See Board of*

*Com'rs of Eagle County v. Evans,* 99 Colo. 83, 60 P.2d 225 (Sup.Ct.1936); *Seward v. County of Bernalillo,* 61 N.M. 52, 294 P.2d 625 (Sup.Ct.1956); *Jochen v. County of Saginaw,* 363 Mich. 648, 110 N.W.2d 780 (Sup.Ct.1961) and *Hicks v. Guilford County,* 267 N.C. 364, 148 S.E.2d 240 (Sup.Ct.1966).

*Silagy,* 244 A.2d at 546 (emphasis added). Observably, that court concluded that it was best (and probably less bothersome) to align itself with the overwhelming weight of the majority. Having done so, it then bolstered its opinion with a lengthy quotation from the Colorado court's *Eagle County* opinion, repeating the entire *ratio decidendi* of the *Eagle County* opinion. *Silagy* itself produced nothing new except another display of judicial propensity to incline toward an overwhelming majority view rather than make an independent analysis. *Silagy* also went on to fortify its ready alignment, by noting that in *Hicks* "the North Carolina court adopted the *Eagle County* rationale." 244 A.2d at 547.

An appeal from the Mercer County court decision to an intermediate appellate New Jersey court proved fruitless, but did produce some guarded advocacy on the proposition of being liberal:[4]

> We are mindful of the decisional law in this State declaring that 'Our act is construed to bring as many cases as possible within its coverage,' and that a *broad interpretation is consistent with the general judicial policy of construing the act liberally in order to implement its beneficent purposes.* [Citations omitted.]

*Silagy v. State & Mercer County,* 105 N.J. Super. 507, 253 A.2d 478–79 (1969) (emphasis added). However, that court felt constrained to do otherwise:

> We also recognize plausible merit to the contention that compensation coverage should be extended to state employees while serving on jury duty. However, we are constrained to conclude that the arguments advanced by petitioner

are beyond the plain language of our act and should be addressed, in the first instance, to the Legislature. *As an intermediate appellate court we adhere to the existing law of the State and,* in the absence of appropriate amendatory legislation, '*any departure from it should be undertaken by the court of last resort,* and not by the *Appellate Division.*' [Citations omitted.]

*Silagy v. State,* 253 A.2d at 479 (emphasis added). In the vernacular, it was a mandatory cop-out, and the case did not reach the New Jersey Supreme Court.

The year 1977 produced another unimpressive decision which is part of the entourage of "overwhelming authority" relied upon by the defendants (the State Insurance Fund and Boundary County) in resisting Mrs. Yount's claim for benefits. A Florida man who appeared at the courthouse for jury duty was knocked down and injured by a crowd exiting an elevator in the courthouse lobby. The Supreme Court of Florida denied his claim, which was against both Dade County and the state of Florida. *Metropolitan Dade County v. Glassman,* 341 So.2d 995 (Fla.1977). The basis of the *ratio decidendi* was the court's earlier case of *Leon County v. Sauls,* 151 Fla. 171, 9 So.2d 461 (1942), wherein it had incompassionately held "that workmen's compensation benefits were unavailable to a citizen who was killed while assisting a law enforcement officer who had asked for help."

The New Mexico decision in *Seward v. County of Bernalillo* best typifies how the overwhelming majority of courts approached the task of deciding the issue, which cannot be described any better than by setting out at length the New Mexico Supreme Court's full opinion:

SADLER, Justice:

The question for decision: Is a juror who suffers an accidental injury while in the performance of his duties as such entitled to an award of compensation for

---

**4.** First, however, the court felt constrained to note that "[t]here are decisions in our sister states which have rejected a juror's compensation claim against a county on the theory that

'his position as a juryman is not the result of a contract,'" citing the North Carolina, Colorado, and New Mexico trilogy. *Silagy,* 244 A.2d at 547.

his injury under the provisions of our Workmen's Compensation Law, 1953 Comp. § 59–10–1 *et seq.?*

The learned trial judge said nay. So say we. *Board of Commissioners of Eagle County v. Evans*, 99 Colo. 83, 60 P.2d 225.

The judgment is affirmed.

It is so ordered.

COMPTON, C.J., LUJAN and McGHEE, JJ., and E.T. HENSLEY, Jr., District Judge, concur.

*Seward*, 61 N.M. 52, 294 P.2d 625 (1956).

*Castro v. State of California and County of Los Angeles*, 70 Cal.App.3d 156, 138 Cal.Rptr. 572 (1977), is a case of doubtful applicability; it was not a workers' compensation case. The action was in tort for injuries allegedly inflicted upon Marina Castro when struck in a crosswalk by a vehicle operated by a person named Sederberg, who was driving to the courthouse to report for jury service. The court stated that there were two issues insofar as the tort action concerned the vicarious liability of the two governmental entities, *i.e.:* "(1) Was Sederberg then an employee or servant of either the State or the County? (2) If so, was he at the time of the accident acting within the scope of that employment?" *Castro*, 138 Cal.Rptr. at 573. On the basis that Sederberg, even if a state or county employee, was not acting within the scope and course of his alleged employment as a summonsed juror, the court found no liability as to both governmental entities.

Of some considerable importance, the court noted the case was not an action by Sederberg seeking to obtain workers' compensation benefits for his injuries, but an action *against* him, sounding in negligence, attempting to include each of the two governmental entities as his putative employer. The court did not rule that Sederberg was *not*, under the circumstances, an employee:

Stated otherwise, the fact that a prospective trial juror may be regarded as an employee for the purpose of providing him, when injured, some monetary relief when that injury was sustained in the course of his or her employment does not

compel that such individual be so regarded when the effect of doing so is not to provide the individual with protection from the adverse consequences of an injury sustained in the course of employment but, instead, to enlarge the group of those liable for the torts of the individual.

. . . .

Consequently, for the purpose of imposing vicarious liability *in tort upon public entities*, we choose to regard trial jurors as nonemployees of those entities, however they may be viewed for workers' compensation purposes.

*Castro*, 138 Cal.Rptr. at 574. Footnote 2, also 138 Cal.Rptr. at page 574, evidenced the California court's willingness to bow to the weight of authority (*i.e.*, *Eagle County*, *Seward*, *Hicks*, and *Silagy*), but implied that there is a distinction between trial jurors and grand jurors: "[T]he courts have split over whether a trial juror is an employee for workers' compensation purposes. The weight of authority, however, denies this status to trial jurors." *Castro*, 70 Cal. App.3d at 159, 138 Cal.Rptr. 572 (citations omitted, but, citing cases including Ohio's *Rogers* case).

*Rector v. Cherry Valley Timber Co.*, 115 Wash. 31, 196 P. 653 (1921), was brought to our attention in Maryland's *Lockerman* opinion. *Rector* did not involve a juror, but it did involve the issue of whether a soldier transferred to work at a logging camp at Everett, Washington, was a voluntary or involuntary worker. Rector was injured, while enlisted in the United States Army and while logging for the Cherry Valley Timber Company. The Washington court declined to treat the soldier as subject to involuntary servitude despite the argument that convict labor, although contracted out by the state to private employers, is involuntary.

The Washington Supreme Court quoted Section 3, C74 of its 1911 workers' compensation act: "Workman means every person in this state who, after September 30, 1911, is engaged in the employment of an employer [engaged in industrial work]." 196 P. at 653. The court also noted the inten-

tion of the legislation, which was almost identical to Idaho's act: "[T]o [remove] all phases of the matter from private controversy and afford sure and certain relief for workers ... To our mind it is clear that the [claimant] was a 'workman' within the definition of the act." *Rector*, 196 P. at 654.[5]

The cases denying coverage, while they may numerically amount to a weight of authority, do not arise to the status of persuasive authority. Moreover, different states have different statutory provisions. Accordingly we must keep in mind the enlightening language of the New Jersey Court of Appeals in *Silagy v. State*, 253 A.2d 478. Similarly, we shall keep in mind the *Hicks* case from North Carolina, in regard to the contrary conclusion of the Idaho Industrial Commission that Mrs. Yount was more like an independent contractor than an employee.

## II. THE IDAHO STATUTES

Thirty years ago a unanimous Idaho Supreme Court, speaking through Justice Knudson, stated the deference with which this Court applies the humane purposes of the legislature's enactment: "It is too well settled under the decisions of this Court to require the citation of authorities that the provisions of the Workmen's Compensation Law of this state are to be liberally construed." *Burch v. Potlatch Forests, Inc.*, 82 Idaho 323, 327, 353 P.2d 1076 (1960). Keeping in mind that precept, our task is *not* to approach the proposition before us with the end in mind being to deprive jurors of the beneficent provisions of the Act (as seemed to be the stance taken by some of those courts whose decisions we have reviewed in Part I), but rather it is for us to ascertain if the provisions of the Idaho statutes are capable of being so interpreted, if necessary, and so applied as to afford compensation to jurors who are injured while performing that service. In that regard, we are of the same view as the *Silagy* court:

We are mindful of the decisional law in this State declaring that 'Our act is construed to bring as many cases as possible within its coverage,' and that a broad interpretation is consistent with the general judicial policy of construing the act liberally in order to implement its beneficent purposes. [Citations omitted.]

*Silagy*, 253 A.2d at 479. We are also mindful that our holding may have an indirect effect on what we perceive to be the administering of justice in Idaho, where the citizenry play a key role as triers of fact in both civil and criminal cases. We are well aware that citizens of Idaho are regularly serving as jurors, and that our judicial system is heavily founded on jury involvement.

Because of the unique circumstances that a citizen is thrust into when called upon to serve as a juror, we deem it improvident to overzealously adhere to the technical rules which the Commission thought appropriate in this instance, namely, utilizing the distinctions between one who performs services as an employee vis-a-vis one who performs those same services as an independent contractor. Industrial Commission Decision, R. at 48–49. The Commission concluded that "the weight of the evidence is that [a juror] was more like an independent contractor than an employee while she served on jury duty and hence is not entitled to worker's compensation benefits. R. at 49. We do not perceive that to be the correct test in these circumstances, and we find the language of the North Carolina Supreme Court persuasive. *Ante* at 310, 796 P.2d at 519. Whatever may be the status of a juror, that status is not that of an independent contractor. As candidly pointed out at page 38 of the defendants' brief filed in this Court: "Under penalty of criminal sanctions, not by contract, must a juror appear for services." *A fortiori*, if the relationship is not bottomed upon a contract mutually agreed upon, there can be no independent contractor.

---

5. The *Lockerman* court, "aligning ... with six of the seven jurisdictions which have decided the issue," 377 A.2d at 1182, declined to embrace *Rector*. "We think that the rationale of *Rector* ... is unduly strained, and decline to adopt it ..." *Lockerman*, 377 A.2d at 1183.

■ Disapproving of the hypothesis by which the Industrial Commission reached its conclusion nevertheless leaves with us the obligation to decide the issue, which we clearly see as a matter of law, and hence can freely determine. In doing so, as alluded to earlier herein, we see little value in the opinions which are heavily relied upon by the defendants.

We turn to the Commission's decision, R., 47, where it sets forth I.C. § 72–205,[6] and particularly the Commission's quite apparent belief that a juror to be covered must meet the requirements of subsection (1) *and* (2). The Commission concludes from its belief that the decisions of the nine "aligned" states all turn predominantly upon whether or not "in the service" constitutes the person being under a contract of hire. On that basis the Commission concluded that a juror is not covered, as there is no contract of hire, either express or implied. R. 48.

There is considerable language in all of the early cases which suggest the requirement of a contract, and one dealing extensively with that proposition is *Lockerman*, the holding of which rested on Maryland's 1951 *Sun Cab* case, 196 Md. 572, 77 A.2d 783 (1951). In their brief provided to the Commission, the defendants relied heavily upon the *Lockerman* case and a similar holding of this Court:

> An award of compensation depends on the existence of employer-employee relationship. *Moon v. Ervin*, 64 Idaho 464, 133 P.2d 933; *Brewster v. McComb*, 78 Idaho 228, 300 P.2d 507. Under the workmen's compensation law the relationship of employer and employee depends upon a contract of hire which may be either express or implied. *Lockard v. St. Maries Lumber Co.*, 76 Idaho 506, 285 P.2d 473; *Shamburg v. Shamburg*, 153 Neb. 495, 45 N.W.2d 446.

*In Re Sines*, 82 Idaho 527, 531, 356 P.2d 226.

R. 18. Both the *Lockerman* holding and the *Sines* holding are couched in terms of requiring a contract of hire, express or implied. This argument may be what misled the Commission into linking subsection (1) of I.C. § 72–205 to subsection (2). However, we direct attention to the fact that when the *Sines* case was decided there was in effect no statutory definition of public employment even vaguely resembling I.C. § 72–205, and in particular subsection (2) thereof. The previous statute was I.C. § 72–103, which can be read at page 304 of Volume 11, 1947 Idaho Code. It was wholly repealed by the 1971 complete recodifica-

---

**6.** Idaho Code § 72–205 reads as follows:

**Public employment generally—Coverage.—** The following shall constitute employees in public employment and their employers subject to the provisions of this law:

(1) Every person in the service of the state or of any political subdivision thereof, under any contract of hire, express or implied, and every official or officer thereof, whether elected or appointed, while performing his official duties, except officials of athletic contests involving secondary schools, as defined by section 33–119, Idaho Code.

(2) Every person in the service of a county, city, or any political subdivision thereof, or of any municipal corporation.

(3) Participants in the Idaho youth conservation project under the supervision of the Idaho state forester.

(4) Every person who is a member of a volunteer fire or police department shall be deemed, for the purposes of this law, to be in the employment of the political subdivision or municipality where the department is organized.

(5) Every person who is a regularly enrolled volunteer member or trainee of the department of disaster and civil defense, or of a civil defense corps, shall be deemed, for the purposes of this law, to be in the employment of the state.

(6) Members of the Idaho national guard while on duty and employees of or persons providing voluntary service to an approved Idaho national guard morale, welfare, and recreational activity. No Idaho compensation benefits shall inure to any such member, employee or volunteer or their beneficiaries for any injury or death compensable under federal law.

[7](6) [Effective January 15, 1990] A community service worker, as that term is defined in section 72–102, Idaho Code, is considered to be an employee in public employment for purposes of receiving workmen's compensation benefits, which shall be the community service worker's exclusive remedy for all injuries and occupational diseases as provided under chapters 1 through 8, title 72, Idaho Code.

tion of the Idaho Workmens' Compensation Act, and I.C. § 72–205 emerged in its place.

No reason was advanced by the Commission in its decision, and nothing is suggested by defendants in their brief, which would justify affording coverage to those classes of workers specifically afforded coverage by statute, *yet not including jurors.* We also note that the statutory scheme *does not exclude jurors.* We reasonably surmise that the legislature simply failed to consider whether jurors should or should not be eligible for compensation benefits when injured while doing jury service. In that regard, we have resorted to our experiences and beliefs, and a general consensus is that most of us would have thought that there was coverage for jurors. Moreover, it is not unrealistic to surmise that most jurors, knowing of the Act, would expect that there is coverage.

The Industrial Commission's written decision, Finding of Fact I, states that: "At all times relevant hereto, Boundary County had assured its obligations under the workmens' compensation law with State Insurance Fund." That same finding also states that: "As a juror, Claimant was entitled to statutory compensation of $5.00 per one-half day of service or $10.00 for a full day of service plus mileage one way to the courthouse." R. 46. Where Mrs. Yount has been found by the Commission to be in service as a juror, we can only conclude that as a juror she was indeed in the service of the county. That being the case, there remains the question of whether she qualifies as a person covered by the Workers' Compensation Act under any one of the six definitions provided by the legislature in I.C. § 72–205. She does not so qualify under (3), (4), (5), and (6), and whether she qualifies under (1) we need not decide because she does qualify under (2). Mrs. Yount's term as a juror was indeed performance in the service of Boundary County.

■ The defendants argue strenuously that Mrs. Yount should not be afforded coverage unless she fulfills the provisions of *both* (1) and (2) of I.C. § 72–205. We are not persuaded, and point out that there is no conjunctive linking between (1) and (2), which is equally true of all six subsections. Each is disjunctively stated as an independent basis for defining public employees in public employment, and hence subject to the Workers' Compensation Act. There is no more reason for linking subsection (2) to (1) than there is to link (2) to (3), (4), (5), or (6). A close reading of the opinions from the "aligned" jurisdictions will disclose to anyone that the key point throughout was whether or not an employer-employee relationship had been created *by a contract, express or implied.* The most recent opinion from the "aligned" states, Louisiana's *Jeansonne* case, 354 So.2d 619, is one which has favored us by setting out its statute. The *Jeansonne* court noted that R.S. 23:1034, states in part that the Louisiana law applies *"to every person in the service of the state or political subdivision thereof,* ... under any *appointment OR contract of hire,* express or implied, oral or written, except an official...." The court then stated: "[e]mployment presupposes an agreement entered into between two parties." *Jeansonne,* 354 So.2d at 620. We look at our own statute for direction, and find subsection (2) applicable. Subsection (1) more closely resembles the Louisiana statute.

This appeal requests us to bring jurors within the encompass of the Idaho Workers' Compensation Act. Clearly the appellate court in New Jersey had in mind that it *should* be done:

We are mindful of the decisional law in this State declaring that *'Our act is construed to bring as many cases as possible within its coverage,' and that a broad interpretation is consistent with the general judicial policy of construing the act liberally in order to implement its beneficent purposes. See, e.g., Hannigan v. Goldfarb,* 53 N.J.Super. 190, 195, 147 A.2d 56 (App.Div.1958); *O'Brien v. First Camden Nat'l Bank & Trust Co.,* 37 N.J. 158, 162–163, 179 A.2d 740 (1962).

*We also recognize plausible merit* to the contention that *compensation coverage should be extended to state employ-*

**316**

*ees while serving on jury duty.* However, we are constrained to conclude that the arguments advanced by petitioner are beyond the plain language of our act and should be addressed, in the first instance, to the Legislature. As an intermediate appellate court we adhere to the existing law of the State and, *in the absence of appropriate amendatory legislation, 'any departure from it should be undertaken by the court of last resort,* and not by the Appellate Division.' [Citations omitted.]

*Silagy,* 253 A.2d at 479–80 (emphasis added). But, as noted at the end of the quotation, that court, *not* being the highest New Jersey court, was not so empowered. However, in regard to Mrs. Yount's claim for compensation benefits, her case *is* in Idaho's highest court and we are not so restricted as was the New Jersey Appellate Division. We could, of course, declare that corrective action is within the sole province of the legislature. But clearly we are presently confronted with a situation where the legislature in three-quarters of a century has not acted. It has not *specifically* included jurors, nor has it excluded them. As a *generality,* it has *included* jurors. This is so simply because they have been brought into the service of the county, an unassailable circumstance which has been in existence since enactment of Title 2 of the 1881 Code of Civil Practice—long prior to the enactment of the Workers' Compensation Act.

The Ohio Court of Appeals, Hamilton County, held that a juror was within the coverage of its Workmen's Compensation Law, observing that the juror was in the service of the state under appointment, and *not* by contract of hire:

This question involves the construction of section 1465–61, General Code. The pertinent parts of that section are as follows:

The terms 'employee,' 'workman' and 'operative' as used in this act [G.C. § 1465–45 et seq.], shall be construed to mean:

1. Every person in the service of the state, or of any county, ... under any appointment *or* contract of hire, ... except any official of the state, or of any county....

A juror is engaged in the service of the state and of the county. In state cases, the juror would be engaged in the service of the state. His selection and service are provided for by the Legislature, and the service is paid for out of the county funds by the county wherein the service is rendered. That service is *not for contract of hire, but by appointment.* The manner of the selection is familiar to the courts and the legal profession, and it is unnecessary to comment further upon the method of appointment.

*Rogers,* 170 N.E. at 600 (emphasis added). The Supreme Court of Ohio affirmed. In doing so, it furnished the manner in which jurors are appointed, which is almost identical to the Idaho process:[7]

Jurors in Ohio are selected by a jury commission; their names are placed in a wheel, and they are blindly drawn out of the jury wheel as they are needed. By their manner of drawing, an element of chance enters into their final selection, *but when drawn, their selection by the*

---

7. Idaho Code § 2–206 provides in part:
   The jury commission for each county shall compile and maintain a master list consisting of all voter registration lists for the county supplemented with names from other lists of persons resident therein, such as lists of utility customers, property taxpayers, motor vehicle registrations, and drivers' licenses, which the Supreme Court from time to time designates.
   Idaho Code § 2–207 provides: "The jury commission for each county shall maintain a master jury wheel, into which the commission shall place the names or identifying numbers of prospective jurors taken from the master list."

Idaho Code § 2–208 provides: "From time to time and in a manner prescribed by the administrative judge the jury commission publicly shall draw at random from the master jury wheel the names or identifying numbers of as many prospective jurors as the administrative judge by order requires."
Idaho Code § 2–210 provides: "The jury commission shall maintain a qualified jury wheel and shall place therein the names or identifying numbers of all prospective jurors drawn from the master jury wheel who are not disqualified under section 2–209, Idaho Code."

*jury commission becomes a definite appointment for such service.* There is no element of chance in the mode of selection by the jury commission for deposit in the wheel. They are selected with reference to their judgment and qualifications as jurors, and with reference to their geographical location; and *when they are drawn from the wheel, their definite selection is accomplished.*

We are unable to draw a distinction between the *selection* of a juror by the jury commission and the *appointment* of such juror by the jury commission; nor are we able to interpret such selection or appointment as being any the less a selection or appointment, because an element of chance enters into the determination of whether the selection or appointment of such juror shall eventually result in his being required to perform jury service. His appointment, however, differs from the appointment of deputies, clerks, and assistants to other officers, in that such deputies, clerks, etc., are appointed to positions provided for by law, at a compensation fixed by law or in a manner provided by law, and are at liberty to accept or decline such an appointment. *A juror is appointed to a position created by law, but has no option to decline such appointment.*

*Rogers,* 171 N.E. at 36 (emphasis added).

Idaho Code § 72–205(2) does not include language which is found in the Ohio statute pertaining to people under contracts for hire. The preceding statute, I.C. § 72–203, declares that workers' compensation law "shall apply to all public employment." Idaho Code § 72–205(2) is a legislative definition of public employment. Black's Law Dictionary, as usual, is helpful. "Service" and "employment" generally imply that the employer, or entity to whom the service is due, both selects and compensates the employee, or person rendering the service.

We also cannot help but keep in mind that although Mrs. Yount is apparently the first person in Idaho to become injured while actively in jury service, and while her injuries may be far from disabling and her medical bills and related expenses may not be extreme, there is always the specter of a very serious accident occurring while on jury duty. For example, the potential of an accident occurring might arise when in a given case the jury wants to view the scene of property in condemnation proceedings or an alleged accident, and the judge directs the bailiff to obtain vehicles necessary to transport the jury to view the site.[8] Likely nothing untoward will occur, but every day somewhere there are vehicles going off the road, or down a river bank, or crossing railroad tracks in front of an oncoming train, or being involved in head-on collisions. The potential for a serious accident occurring to a juror is very real. Seemingly, anyone who ponders even shortly on such a possibility will feel greatly relieved on being informed that there will be some sure and certain relief available for the injured juror.

Moreover, in regard to Mrs. Yount's claim, and her likelihood of being called again for jury service, and other citizens being likewise called, would it not be far better that they and all jurors be given an assurance that, although their daily stipend is small, for any injuries incurred on jury duty the county's insurance will pay the bills and recompense them for any injury suffered? It is also much doubted that any of the Idaho trial judges would penalize a prospective juror who declares: "No thanks for your offer of jury duty until I know that I will be covered while so serving the county." Mrs. Yount's claim, and her counsel's pursuit of it, has served the admirable purpose of alerting this Court and likely many other uninformed citizens of a defect needing to be corrected, which is all to the benefit of jurors today and in the future, and for the benefit of a justice system that relies on jurors, all in accordance with our Idaho Constitution.

The decision of the Industrial Commission is reversed, and the cause remanded for further proceedings which will include determining Mrs. Yount's permanent disability, her medical expenses, and the entry

---

**8.** Chief Justice Bakes will recall that over twenty years ago we had just such an opportunity, when, as involved counsel, we both accompanied a jury on a viewing along the Pend d'Oreille River in northern Idaho.

of an appropriate award. Costs are awarded to claimant/appellant.

BOYLE, J., and TOWLES, J. Pro Tem., concur.

TOWLES, Justice Pro Tem., specially concurring.

I concur in the result reached and in the majority's view that jurors are covered by the Workers' Compensation Act for injuries suffered while in jury service under the definition in I.C. § 72-205(2). However, it would be my view that I.C. § 72-205(1) also affords coverage, as certainly jurors are appointed officials of the county while in such service.

As a former trial judge of this state, I confess that it has always been my belief that jurors were so covered, and if so asked by a juror, would have advised them accordingly. The tremendous responsibility thrust upon jurors as a result of such public service qualifies them as public officials of the highest order and no less important to the success of the judicial system than are the judges, clerks, bailiffs, court reporters, and other full time employees of the state or county.

BAKES, Chief Justice, concurring in result:

I concur with the Court's conclusion that I.C. § 72-205(2) [9] provides that county jury service is covered employment under the Worker's Compensation Act. When subsection (2) is construed liberally in favor of coverage, as this Court's cases say we must construe it, *see Norton v. Dept. of Employment,* 94 Idaho 924, 500 P.2d 825 (1972); *State v. Alkire,* 79 Idaho 334, 317 P.2d 341 (1957); *Wright v. Village of Wilder,* 63 Idaho 122, 117 P.2d 1002 (1941), the subsection covers persons serving on county juries.

I believe that the Idaho statute is distinguishable from the statutes in other states.

I.C. § 72-205(2) covers "persons in the service of a county" and does not require that such a person in the service of a county be an employee serving pursuant to a contract of employment, as is apparently required of service under subsection (1) of 72-205. While subsections (1) and (2) of 72-205 are somewhat overlapping and redundant, to incorporate the requirement in subsection (1) of service under a contract of hire into subsection (2) would make the two sections totally redundant. For whatever reasons, the legislature, in drafting subsection (2), did not require that "person[s] in the service of a county" must be performing that service "under any contract of hire, express or implied," as is required in subsection (1). Accordingly, I concur in the Court's conclusion that county jury service is subject to the provisions of the worker's compensation laws.

JOHNSON, J., concurs.

9.   **72-205. Public employment generally—Coverage.**—The following shall constitute employees in public employment and their employers subject to the provisions of this law:
(1) Every person in the service of the state or of any political subdivision thereof, under any contract of hire, express or implied, and every official or officer thereof, whether elected or ap-

pointed, while performing his official duties, except officials of athletic contests involving secondary schools, as defined by section 33–119, Idaho Code.
(2) Every person in the service of a county, city, or any political subdivision thereof, or of any municipal corporation.
. . . .