930 P.2d 1026

**Ronald H. KENNEDY, Claimant–Respondent,**

v.

**Thomas A. FOREST, Employer, and Associated Loggers Exchange, Surety, Defendants–Appellants.**

No. 22788.

Supreme Court of Idaho, Lewiston, October 1996 Term.

Jan. 22, 1997.

---

Moffatt, Thomas, Barrett, Rock & Fields, Chtd., John Barrett, argued, Boise, for appellants.

Goicoechea Law Offices, James C. Arnold, argued, Lewiston, for respondent.

TROUT, Justice.

This worker's compensation appeal arises from an order of the Industrial Commission awarding claimant Ronald Kennedy benefits.

## I.

### BACKGROUND

On April 2, 1993, claimant Ronald Kennedy was injured when the logging truck he was

driving left the highway at approximately 7:55 p.m. Thomas Forest owned the truck. Kennedy seeks worker's compensation benefits from Forest for his injuries.

Forest owns four logging trucks and employs drivers to haul logs. In March of 1993, Forest entered into a contract with Ken Walters, a logging contractor, whereby Forest agreed to transport logs from Pinehurst, Idaho, to Yakima, Washington. Walters was to pay Forest based upon the volume of logs hauled. On March 23, Forest contacted one of his regularly employed drivers, Robert Kinzer, to perform part of the job. On March 26, Forest left Idaho on business and did not return until March 31.

Unbeknownst to Forest, on March 27, Kinzer contacted Kennedy and made arrangements for Kennedy to substitute for him and haul logs under the Walters contract using Forest's truck. Kinzer agreed to pay Kennedy for this work and gave him $100 to cover expenses. Kinzer was supposed to return and take over from Kennedy on April 1.

On March 29, Kennedy began work. Between March 29 and March 31, he hauled two loads from Pinehurst to Yakima. On the evening of March 31, Forest returned home and found several messages on his answering machine from Kennedy, whom he did not know. Forest returned the calls and, through a conversation with Kennedy's mother, discovered that Kennedy was substituting for Kinzer and driving one of Forest's trucks. Kennedy's mother informed Forest that Kinzer was expected to return the next day and relieve Kennedy.

On April 1, Kennedy resumed hauling logs when Kinzer did not return as expected. On April 2, the day of the accident, Kennedy drove to Yakima and unloaded a shipment. He stopped for lunch there and consumed two beers. He then stopped in Waitsburg, 138 miles away, and consumed more alcohol at a restaurant/tavern. In Dayton, ten miles from Waitsburg, Kennedy picked up a twelve-pack of beer which he apparently consumed on the road. The accident occurred 118 miles from Dayton, along the route between Yakima and Pinehurst. At the scene of the accident, the police found empty beer cans in the truck and around the crash site.

An expert toxicologist determined that Kennedy had a blood alcohol level of .19 to .21 at the time of the accident.

Following the accident, Forest continually denied that Kennedy was his employee. Also after the accident, Walters paid Forest according to their agreement for the hauled shipments, three of which Kennedy transported. Forest paid Kinzer the amount of money upon which they had initially agreed, and Kinzer paid Kennedy the amount upon which they had originally agreed.

## II.

## PROCEDURAL HISTORY

Kennedy filed a claim for worker's compensation benefits, alleging that: (1) at the time of the accident, he was Forest's employee, and (2) the accident arose out of and in the course of employment. The Industrial Commission's (Commission) referee issued Findings of Fact, Conclusions of Law, and Proposed Order, in which she ruled: (1) no express contract of hire existed between Forest and Kennedy, (2) an implied employment contract existed between Forest and Kennedy based upon the theory of unjust enrichment, (3) Kennedy's intoxication was the proximate cause of the accident, (4) the accident arose out of and in the course of employment, and (5) I.C. § 72–208(2) applies, by operation of which Kennedy's worker's compensation benefits were reduced by fifty percent. The Commission adopted the referee's findings, conclusions, and order in a 2–1 decision. Forest appeals the Commission's decision on issues (2), (4), and (5).

## III.

## DISCUSSION

### A. Employment relationship between Forest and Kennedy

 For Kennedy to be eligible for worker's compensation benefits, he must first demonstrate that an employment relationship between himself and Forest existed at the time of the accident. *See In re Sines*, 82 Idaho 527, 530, 356 P.2d 226, 229 (1960); *Seward v. State*, 75 Idaho 467, 468, 274 P.2d

993, 994 (1954). This Court will liberally construe the worker's compensation statutes to serve the scheme's humane purposes. *Ogden v. Thompson*, 128 Idaho 87, 88, 910 P.2d 759, 760 (1996) (citing *Kinney v. Tupperware Co.*, 117 Idaho 765, 769, 792 P.2d 330, 334 (1990)). Idaho Code § 72–102(10) defines an employee as "any person who has entered into the employment of, or who works under contract of service or apprenticeship with, an employer." Idaho Code § 72–102(11) defines an employer as "any person who has expressly *or impliedly* hired or contracted the services of another." I.C. § 72–102(11) (emphasis added). An employment relationship sufficient to expose an employer to worker's compensation liability thus can arise through operation of an implied contract of hire. *See In re Sines*, 82 Idaho at 530, 356 P.2d at 229.

■ The Commission concluded that an employment relationship existed between Forest and Kennedy based upon an implied contract of hire. In arriving at this conclusion, the Commission noted that Forest had accepted the "benefit" of Kennedy's transportation of the three loads of logs to Yakima. Presumably, this benefit was Walters' payment to Forest under their contract, which included payment for the three loads hauled by Kennedy. The Commission reasoned that Forest would be unjustly enriched by retaining the benefit of Kennedy's services "without liability for those services." Although the Commission's discussion of this issue includes definitions of both contracts implied-in-fact and those implied-in-law, the Commission's reliance on the theory of unjust enrichment to find an implied contract makes clear that it found an employment relationship between Kennedy and Forest based on an implied-in-law contract. The question of whether an implied-in-law contract can create an employment relationship is one of law, and this Court exercises "free review" over such issues. *Ogden*, 128 Idaho at 88, 910 P.2d at 760 (citing Idaho Const. art. V, § 9; *Dewey v. Merrill*, 124 Idaho 201, 203, 858 P.2d 740, 742 (1993)).

■ Contracts implied-in-law and those implied-in-fact are two distinct concepts. A contract implied-in-fact is a true contract whose existence and terms are inferred from the conduct of the parties. *Continental Forest Prods., Inc. v. Chandler Supply Co.*, 95 Idaho 739, 743, 518 P.2d 1201, 1205 (1974). Such a contract is grounded in the parties' agreement and tacit understanding. *Id.*, 95 Idaho at 743, 518 P.2d at 1205. In contrast, a contract implied-in-law is not a true contract at all. *Id.*, 95 Idaho at 743, 518 P.2d at 1205. It is a legal fiction, a non-contractual obligation created by the courts to provide a contractual remedy where none existed at common law. *Id.*, 95 Idaho at 743, 518 P.2d at 1205 (citation omitted). It is "imposed by law for the purpose of bringing about justice and equity without reference to the intent or the agreement of the parties and, in some cases, in spite of an agreement between the parties." *Id.*, 95 Idaho at 743, 518 P.2d at 1205 (citations omitted). We employ the phrase "implied-in-law contract" synonymously with quasi-contract, unjust enrichment, and restitution. *Id.*, 95 Idaho at 743, 518 P.2d at 1205.

■ In the worker's compensation context, an implied-in-law contract cannot form the basis for an employment relationship. First of all, an implied-in-law contract is not a contract or agreement at all and is simply a method by which the courts fashion a remedy in cases where there is no binding relationship between the parties. The definition of "employer" in the worker's compensation statutes clearly contemplates a situation where one person employs another person or contracts to do so—as opposed to a relationship implied by the courts to do equity. Secondly, quasi-contract originates in the theory of unjust enrichment. The measure of recovery in such an action is limited to the "value of the benefit bestowed upon the defendant which, in equity, would be unjust to retain without recompense to the plaintiff." *Gillette v. Storm Circle Ranch*, 101 Idaho 663, 666, 619 P.2d 1116, 1119 (1980); *Hertz v. Fiscus*, 98 Idaho 456, 457, 567 P.2d 1, 2 (1977) (citing *Continental Forest*, 95 Idaho at 743, 518 P.2d at 1205). A search of the case law has revealed no instance of a court awarding damages other than these in a quasi-contractual action, and no case in which a court treated a contract implied-in-law as a

true contract and sought to imply terms based upon it. Thus, an implied-in-law contract cannot create an employment relationship and cannot expose Forest, as an employer, to worker's compensation liability or any other liabilities stemming from a true employment contract or agreement to hire.

 The Commission's conclusion that an implied-in-law contract exists in this instance is also incorrect. For a quasi-contractual obligation to arise, Forest would have to have been unjustly enriched by his retention of the benefits of Kennedy's services. In this case, however, Forest was not unjustly enriched. Even if Forest received a "benefit" from Kennedy's services upon receipt of Walters' payment, Forest indirectly compensated Kennedy for his services. Upon receiving payment from Walters, Forest paid Kinzer the amount upon which they had agreed. Kinzer, in turn, paid Kennedy the amount that they had negotiated when Kennedy agreed to substitute for Kinzer. Thus, Forest already compensated Kennedy for his services and, consequently, for the value of any "benefit" that Forest received.

The facts of this case, however, raise the question of whether there was an employment relationship based upon an implied-in-*fact* contract of hire. We thus remand this case to the Commission for a determination of whether an implied-in-fact contract of hire existed between Forest and Kennedy at the time of the accident.

### B. Remaining issues

Due to our decision remanding this case to the Commission for a determination of whether an employment relationship existed based on an implied-in-fact contract, we need not reach the issues on appeal regarding the requirement that a compensable accident arise out of and in the course of employment and the alleged conflict between Idaho Code §§ 72–208(2) and 72–442.

### IV.

### CONCLUSION

We hold that the Commission erred in ruling that a contract implied-in-law can cre-ate an employment relationship and expose Forest to worker's compensation liability. We thus vacate the Commission's order and remand for a determination of whether an employment relationship existed between Forest and Kennedy at the time of the accident based on an implied-in-fact contract. Costs on appeal to appellants.

McDEVITT, C.J., and JOHNSON, SILAK and SCHROEDER, JJ., concur.