IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 44836

| | | |
|---|---|---|
| **MEDICAL RECOVERY SERVICES, LLC,** an Idaho limited liability company, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | **Boise, December 2017 Term** |
| v. | ) ) | **2018 Opinion No. 31** |
| **JARED NEUMEIER,** | ) ) ) | **Filed: April 5, 2018** |
| Defendant-Respondent. | ) ) ) | **Karel A. Lehrman, Clerk** |
| _____ | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Hon. Joel E. Tingey, District Judge.

The judgment of the district court is <u>affirmed</u>.

Smith, Driscoll & Associates, PLLC, Idaho Falls, for appellant. Bryan N. Zollinger argued.

Hopkins, Roden, Crockett, Hansen & Hoopes, PLLC, Idaho Falls, for respondent. Sean J. Coletti argued.

_____

BRODY, Justice.

This case centers on efforts to collect payment for medical services. Medical Recovery Services, LLC ("MRS"), a licensed collection agency, appeals from a district court decision affirming rulings of the magistrate court in favor of the patient. We affirm the district court's decision.

## I.     FACTUAL AND PROCEDURAL HISTORY

In late 2012, Jared Neumeier received medical services from Dr. Eric G. Baird, a medical provider operating through Idaho Falls Surgical Specialists, PLLC. During his visit, Neumeier provided Dr. Baird's office with information regarding his Blue Cross of Idaho insurance coverage. Neumeier left the office expecting that the bill would be submitted to his insurer. Following his visit, for reasons that are not part of the record, the office did not submit the bill to

1

Neumeier's insurer, and instead sought payment directly from him. The office sent the bill to an incorrect address.

In April 2014, without a response from Neumeier, Dr. Baird's billing agent assigned the delinquent account to MRS for collection. Pursuant to the assignment, MRS acquired Dr. Baird's contractual rights in the agreement with Neumeier, as well as interest in any claim against Neumeier for payment of services in the amount of $1,190.28. Thereafter, MRS continued to try to contact Neumeier by sending him mail at an incorrect address. Throughout this time, Neumeier did not receive any of the attempted communications from Dr. Baird or MRS, nor did he receive any other form of demand for payment related to his visit. During this same time, Neumeier saw Dr. Baird for other unrelated medical services, which resulted in a separate bill that Dr. Baird's office submitted to Neumeier's insurer for payment.

In April 2015, MRS sent a letter addressed to Neumeier at his correct address. The one-page letter—which was attached to MRS's complaint and is the only communication to Neumeier from either Dr. Baird or MRS found in the record—took the form of a notice letter under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692a–o. In addition to stating Neumeier's contact information, the notice letter provided an amount of debt ($958.63 exclusive of interest), the name of the creditor (MRS), and paraphrased recitations of the required inclusions under the Act. The undated notice letter did not identify Dr. Baird or connect the debt with a particular bill or treatment.

On May 14, 2015, without a response from Neumeier, MRS sent the account to its legal counsel with instructions to file an action to recover the debt. Thereafter, on Saturday, May 16, 2015, Neumeier returned home from a two-week vacation and first opened the notice letter. On Monday, May 18, 2015, Neumeier visited Dr. Baird's office under the belief that the notice letter was a fraud or scam. During this visit, the office discovered that it had never submitted the bill to Neumeier's insurer; however, the office also informed Neumeier that the account had already been assigned to MRS for collection. On the same date, MRS filed a complaint against Neumeier, seeking a total award of $1,891.37, including $958.63 for the principal amount, $282.39 in statutory prejudgment interest, and attorney's fees and costs. The next day, Neumeier contacted MRS and was informed that he was "too late" because the account had already been forwarded to its legal counsel. Thereafter, Neumeier contacted MRS's legal counsel, which told

him that he owed over $1,800. A month later, Neumeier was served with the complaint and summons.

Subsequent to Neumeier's May 18th visit, Dr. Baird's office submitted the bill to Blue Cross for payment. As shown by an explanation of benefits form that Neumeier received from the insurer, Blue Cross paid all but $42.66 of the bill, which was designated as a copayment balance. Shortly thereafter, Dr. Baird's office notified Neumeier that it was waiving the copayment balance. The office also informed MRS that the account had been satisfied, and MRS in turn notified its counsel. The record is silent as to how MRS's contractual rights and interest in any claim against Neumeier related to the post-assignment interaction between Dr. Baird and Neumeier.

Once the account was satisfied, Neumeier reached out to MRS in an effort to have the debt collection action terminated. MRS refused, and Neumeier moved to dismiss the complaint pursuant to Idaho Rule of Civil Procedure 12(b)(6). The motion was supported by an affidavit from Neumeier. MRS filed its opposition—with an affidavit from an MRS manager—in which it sought denial of the motion and requested that the magistrate court enter summary judgment in its favor for the amount of $0. At a hearing on the dismissal motion, the magistrate converted Neumeier's motion to a summary judgment proceeding. The magistrate ultimately granted summary judgment in favor of Neumeier while denying the same for MRS, and, in turn, entered judgment for Neumeier and awarded him attorney's fees and costs as the prevailing party.

Following a motion from MRS, the magistrate set aside the judgment and allowed the parties to submit supplemental briefing on the unresolved issue of MRS's entitlement to statutory prejudgment interest. Thereafter, the magistrate ruled that MRS was not entitled to prejudgment interest. Accordingly, the magistrate reinstated and affirmed its prior decision, awarded additional fees and costs to Neumeier, and entered judgment in favor of Neumeier. The magistrate later denied MRS's motion to reconsider, and a first-amended judgment was entered to reflect an award of additional fees and costs to Neumeier.

From there, MRS appealed the matter to the district court. The district court dismissed the appeal after MRS failed to timely file the requested transcript and to pay the required transcript fee. The district court subsequently reinstated the appeal after finding that MRS's failures constituted excusable neglect. The court eventually affirmed the decisions of the magistrate and awarded Neumeier additional fees and costs. MRS now timely appeals to this Court.

## II. STANDARD OF REVIEW

When reviewing a decision of a district court acting in its capacity as an appellate court, this Court

> reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008) (quoting *Nicholls v. Blaser*, 102 Idaho 559, 561, 633 P.2d 1137, 1139 (1981)). "[T]his court does not review the decision of the magistrate court. 'Rather, we are procedurally bound to affirm or reverse the decisions of the district court.'" *Pelayo v. Pelayo*, 154 Idaho 855, 859, 303 P.3d 214, 218 (2013) (citation omitted) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)).

## III. ANALYSIS

This case turns on the summary judgment decision. Once the underlying bill was resolved independent of the litigation, MRS acknowledged that it was no longer seeking collection of the principal amount and instead sought summary judgment for $0. Even with that amount, the summary judgment analysis influenced the subsequent decisions on prejudgment interest and attorney's fees and costs. MRS appeals each of these decisions, arguing that the district court erred in affirming (1) summary judgment in favor of Neumeier, (2) the denial of prejudgment interest, and (3) the determination of Neumeier as the prevailing party. Both parties claim they are entitled to attorney's fees and costs on appeal.

The dispositive question running through each of these issues is whether the debt underlying MRS's claim was valid. In an action for debt collection, it stands to reason that a debt collector can only be entitled to recover on a valid debt. Both the magistrate and district court concluded that there was never an amount due and owing against Neumeier, and, consequently, MRS was not pursuing a valid debt. Under the above-stated standard of review, we must consider whether this determination is based on legal conclusions drawn from factual findings that are supported by substantial and competent evidence in the record. If that is the case, we will affirm the decision of the district court as a matter of procedure. *Losser*, 145 Idaho at 672, 183 P.3d at 760.

**A. The District Court Did Not Err in Affirming the Decision of the Magistrate to Grant Summary Judgment in Favor of Neumeier.**

MRS argues that granting summary judgment in favor of Neumeier was in error, and that, instead, it was entitled to summary judgment. We review a grant of summary judgment under the same standard used by the trial court. *Read v. Harvey*, 141 Idaho 497, 499, 112 P.3d 785, 787 (2005). "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). Generally, when considering a motion for summary judgment, we construe all disputed facts and make all reasonable inferences in favor of the nonmoving party. *Sprinkler Irrigation Co. v. John Deere Ins.*, 139 Idaho 691, 695–96, 85 P.3d 667, 671–72 (2004). Yet, where the evidentiary facts are undisputed and the trial court rather than a jury will be the trier of fact, summary judgment can be granted despite the possibility of conflicting inferences arising from those undisputed facts. *Riverside Dev. Co. v. Ritchie*, 103 Idaho 515, 519, 650 P.2d 657, 661 (1982). This is permissible because under such circumstances the trial court would be responsible for resolving the conflict between those inferences at trial. *Id.*

As a preliminary matter, Neumeier contends that MRS waived any challenge to the magistrate's summary judgment decision when it failed to raise the issue in its brief on appeal before the district court. Although MRS did not expressly raise the issue in its brief, the district court addressed the argument under Idaho Appellate Rule 35(a)(4) because the issue was subsidiary to MRS's express argument against the magistrate's prevailing party determination. MRS also expressly raised the issue in its amended notice of appeal and Neumeier engaged the issue. We find this proper under Rule 35(a)(4). *Griffith v. Clear Lakes Trout Co.*, 146 Idaho 613, 618–19, 200 P.3d 1162, 1167–68 (2009).

Turning to the substantive issue, MRS raises four arguments in support of its position that summary judgment for Neumeier was in error: (1) the record does not establish that an express or implied-in-fact condition precedent existed under the contract between Dr. Baird and Neumeier; (2) the district court wrongly constructed an implied-in-law condition precedent under the contract; (3) the district court mischaracterized factual findings in the record; and (4) the district court's ruling is contrary to sound reasoning and public policy.

The first two arguments require consideration of the agreement underlying this dispute. The record does not provide an express written or oral contract between Dr. Baird and Neumeier; however, the evidence showing the nature of the arrangement between the parties establishes that

5

there existed an implied-in-fact contract. *Kennedy v. Forest*, 129 Idaho 584, 587, 930 P.2d 1026, 1029 (1997) (citing *Cont'l Forest Prods., Inc. v. Chandler Supply Co.*, 95 Idaho 739, 743, 518 P.2d 1201, 1205 (1974)). "A contract implied-in-fact is a true contract whose existence and terms are inferred from the conduct of the parties. Such a contract is grounded in the parties' agreement and tacit understanding." *Id.* Under that contract, Dr. Baird promised to provide medical services to Neumeier in exchange for Neumeier's promise to pay for those services. This dispute arises from Neumeier's promise to pay.

MRS contends that summary judgment was erroneously premised on a finding that Neumeier's obligation to pay was subject to a either an express or implied-in-fact condition precedent that is not found under the contract, or the judicial construction of an implied-in-law condition precedent that is not necessary to attain a just result. "A condition precedent is an event not certain to occur, but which must occur, before performance under a contract becomes due." *Weisel v. Beaver Springs Owners Ass'n*, 152 Idaho 519, 528, 272 P.3d 491, 500 (2012) (quoting *World Wide Lease v. Woodworth*, 111 Idaho 880, 887, 728 P.2d 769, 776 (Ct. App. 1986)). "A condition precedent may be expressed in the parties' agreement, implied in fact from the conduct of the parties, or implied in law (constructive) where the courts 'construct' a condition for the purpose of attaining a just result." *Id.* "As a general rule, conditions precedent are not favored by the courts." *Steiner v. Ziegler Tamura Ltd.*, 138 Idaho 238, 242, 61 P.3d 595, 599 (2002).

Without a written or oral agreement, the existence of a condition precedent expressed in the same is not at issue. Nonetheless, MRS's arguments also account for the possible application of an implied-in-fact or implied-in-law (or "constructive") condition precedent. Starting with the former, "[c]ontractual conditions are implied in fact when those conditions are necessarily inherent in the actual performance of the contract." 17A C.J.S. *Contracts* § 449 (2017). These conditions are implied from the express language used by the parties or from the surrounding circumstances. 13 Richard A. Lord, *Williston on Contracts* § 38.11 (4th ed. 2017). In his treatise on contracts, Williston further sketched the nature of implied-in-fact conditions:

> Conditions may be expressed not in the usual and appropriate language for conditions but by the very nature of the thing promised. A promise to deliver goods necessarily involves the condition that the promisee will take delivery; a promise to repair another's house involves the condition that the promisor will be allowed access to the house. These conditions may be called conditions implied in fact or necessary conditions. They are in the nature of express conditions except

regarding the mode of their satisfaction and proof; that is, there must be literal compliance, or no duty will be triggered.

*Id.* (footnotes omitted). Because implied-in-fact conditions are, in form, express conditions, they derive from the contracting parties' intentions. *World Wide Lease*, 111 Idaho at 888, 728 P.2d at 777. Thus, in examining their existence, the court endeavors to determine the intent of the parties. *Id.* If the parties' intent cannot be determined from the plain language of the contract, interpretation of the contract for the existence of a condition precedent is a question of fact. *Weisel*, 152 Idaho at 528 & n.3, 272 P.3d at 491 & n.3. Because this case was set for a bench trial, the existence of a condition can be based on a reasonable inference as to the contracting parties' intent so long as that inference is drawn from undisputed facts. *Drew v. Sorenson*, 133 Idaho 534, 539, 989 P.2d 276, 281 (1999).

Therefore, to determine whether summary judgment was proper as a matter of law with respect to a possible implied-in-fact condition under the relevant contract, we must first look to the facts in the record. Taken as a whole, a clear conclusion emerges from the following undisputed facts that the contracting parties' intended for a condition to exist: In late 2012, Neumeier received medical services from Dr. Baird, shared his insurance information with Dr. Baird's office, and left with the expectation that the office would submit the corresponding bill to his insurer pursuant to the information he provided. From there, the office did not submit the bill to his insurer, but instead pursued payment directly from him by sending mail to his attention at an incorrect address. Given this error, Neumeier did not receive any of the mail, nor did he receive any other communication concerning the relevant bill from Dr. Baird's office following his visit. During this time period Neumeier received other unrelated medical services from Dr. Baird, which resulted in a separate bill that was thereafter submitted to Neumeier's insurer by the office. Two and a half years after his initial visit, Neumeier received the notice letter from MRS. In response, he returned to Dr. Baird's office to investigate the matter, at which point the office discovered that it had never submitted the bill to Neumeier's insurer. From there, the office submitted the bill to Neumeier's insurer and received payment after a contractual discount. Dr. Baird waived the remaining copayment balance.

These facts, which are drawn from a pair of affidavits from Neumeier, represent the entirety of the evidence in the record pertaining to the parties' conduct under their implied-in-fact contract. While there may be other *possible* evidence indicating that insurance billing was done as a courtesy only and that Neumeier was responsible for the charges without regard to

whether or when payment was received from the insurance company, the undisputed factual findings set forth above are not controverted by *actual* evidence in the record. Unlike the situation in *Medical Recovery Services, LLC v. Strawn*, 156 Idaho 153, 154, 321 P.3d 703, 704 (2014), the record here does not contain a Patient Sign-in Form or office policy that states: "I agree to pay my account in full at the time of services unless before services are performed [the health care provider] agrees to other payment arrangements. I understand that [the health care provider] will submit insurance benefits for payment only as a courtesy for me." Instead, without a factual dispute, the conclusion that follows from the contracting parties' course of conduct is that they intended for the bill to be submitted to Neumeier's insurer before he was required to pay an amount considered due and owing. In other words, Dr. Baird and Neumeier intended for a condition precedent to exist under their contract. This conclusion is the one reached by the magistrate. Because we find it to be a proper conclusion of law based on the facts at hand, we need not address MRS's second argument as to an implied-in-law condition.

MRS's third argument against the summary judgment decision is that it was founded on a mischaracterization of the facts. MRS specifically points to the following analysis from the district court's decision:

> In this case, no Party disputes that once the procedure was performed, the charges were subject to at least two adjustments before any amount could be considered due and owing. First, where Neumeier had medical insurance, the charge was subject to a contractual adjustment for the benefit of Neumeier and his insurer. Second, the charge would be reduced by payments made by the insurer after the contractual adjustment. Only then could an amount due and owing by Neumeier be determined.

MRS argues that the district court incorrectly stated that it did not dispute that the bill was to be submitted to Neumeier's insurer before an amount could be considered due and owing against Neumeier. Rather, MRS contends, Neumeier owed an amount after he received the medical services, which included any portions that were eventually paid by his insurer.

We agree with MRS to the extent that it has consistently disputed the legal conclusion that a conditional element needed to be satisfied before an amount became due and owing against Neumeier. Even though our analysis of that issue is distinct from that of the district court, we reach the same result because, as discussed above, the undisputed facts drawn from the record establish that the contracting parties intended for the bill to be submitted to Neumeier's insurer before he was obligated to pay an amount due and owing. Therefore, even if the district

8

court was incorrect in stating that MRS did not dispute this conclusion, MRS has not offered evidence to show that a factual dispute as to that conclusion remains.

MRS's final argument against the summary judgment decision is that sound reasoning and public policy support a ruling it its favor. MRS's argument is not geared at a specific violation of public policy, but instead contends in a less direct manner across numerous hypotheticals that the summary judgment ruling was wrong. Generally, MRS asserts that the ruling will have widespread negative implications for the medical services industry. To be clear, our decision here should not be read as creating a blanket rule that bills must be submitted to an insurer before payment is due and owing. Rather, this decision is grounded in the record and facts specific to this case. The conditional element is a product not only of the evidence of these particular contracting parties' conduct, but also the lack of any evidence suggesting another conclusion should apply.

In sum, MRS has not demonstrated error in the decision to grant summary judgment in favor of Neumeier. Because the district court affirmed the magistrate's decision, we affirm that decision as a matter of procedure.

**B. The District Court Did Not Err in Affirming the Decision of the Magistrate that MRS Was Not Entitled to an Award of Prejudgment Interest.**

MRS next asserts that the district court erred in affirming the magistrate's decision that MRS was not entitled to prejudgment interest under Idaho Code section 28-22-104. Before reaching that question, the parties first dispute whether the district court applied the proper standard of review when it reviewed the magistrate's decision for an abuse of discretion. MRS contends that this was an error, and that de novo review was proper because whether to award prejudgment interest if such interest is capable of mathematical computation is a question of law.

We review an award of prejudgment interest under the abuse of discretion standard. *Dillon v. Montgomery*, 138 Idaho 614, 617, 67 P.3d 93, 96 (2003) (citing *Belk v. Martin*, 136 Idaho 652, 660, 39 P.3d 592, 600 (2001)). MRS cites to *Ross v. Ross*, 145 Idaho 274, 277, 178 P.3d 639, 642 (Ct. App. 2007), wherein the Court of Appeals reviewed inconsistent case law on the proper standard of review for this issue. In *Ross*, the court explained that this Court's decision in *Belk* relied on an earlier Court of Appeals case, which, in turn, had relied on a Ninth Circuit case and did not address the inconsistent case law. *Id.* (citing *Stueve v. N. Lights, Inc.*, 122 Idaho 720, 723, 838 P.2d 323, 326 (Ct. App. 1992)). Despite this, the Court has not

overruled its conclusion in *Belk*, and therefore the district court properly employed the abuse of discretion standard while acting in its appellate capacity.

Turning to the merits of the issue, the fate of MRS's argument is contingent on there having been an amount due and owing against Neumeier. In other words, consistent with the summary judgment analysis, an award to MRS for prejudgment interest necessarily required there to be a valid debt upon which interest could accrue. As discussed above, this was not the case.

Notwithstanding, MRS supports its argument with citation to a pair of provisions under the prejudgment interest statute, which read as follows:

> (1) When there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of twelve cents (12¢) on the hundred by the year on:
>
> . . . .
>
> 2. Money after the same becomes due.
>
> . . . .
>
> 6. Money due upon open accounts after three (3) months from the date of the last item.

I.C. § 28-22-104(1). These provisions are applicable here in so far as there was no express, written contract fixing an interest rate. Yet, neither supplies the crucial element missing from MRS's argument—an amount due and owing—and therefore neither provides MRS with the interest it seeks.

In reverse order, the second provision has no application in this case, because the contract and payment at issue do not fit the definition of an open account as it is used under section 28-22-104. Namely, "[a]n open account refers to a continuing series of transactions between the parties, where the balance is unascertained and future transactions between the parties are expected." *Seubert Excavators, Inc. v. Eucon Corp.*, 125 Idaho 409, 415, 871 P.2d 826, 832 (1993) (citing 1 Am. Jur. 2d *Accounts and Accounting* § 4 (1962)). "A defining characteristic of an open account is that services are recurrently granted over a period of time. Thus, an open account is similar to a line of credit." 1 Am. Jur. 2d *Accounts and Accounting* § 4. Here, even if Neumeier received medical services from Dr. Baird on multiple occasions, each instance was a particular, closed transaction—as evidenced by the creation of a unique bill—as opposed to an ongoing line of credit. The other statutory provision calculates interest from the date on which the principal amount becomes due. *Linford v. Hunsaker*, 92 Idaho 505, 506, 446 P.2d 627, 628

10

(1968). Thus, interest is predicated on there being an amount that becomes due. Because we conclude that there was never an amount due and owing against Neumeier, it follows that this provision cannot apply.

MRS also cites to *State Drywall, Inc. v. Rhodes Design & Development*, 127 P.3d 1082, 1085–87 (Nev. 2006), for its position that prejudgment interest should be awarded against amounts that were paid on the bill only after the complaint was filed. In *State Drywall*, the debtor made two payments on a contract after the complaint was filed but before trial. 127 P.3d at 1084. The Supreme Court of Nevada held that those amounts should be included in the assessment of an award for prejudgment interest because the relevant statutes did not limit such awards only to the value of the final judgment. *Id.* at 1086. The court added that holding otherwise would allow defendants in a collection case to avoid exposure to prejudgment interest by delaying payment of a debt until just before trial. *Id.* at 1087. As sound as this logic may be under Nevada law, the context of this case is distinct. Specifically, here, unlike in that case, the record does not establish that MRS was seeking a valid debt against Neumeier. Summary judgment was granted in favor of Neumeier for this specific reason, and, as stated above, that decision was not erroneous. While the underlying bill was satisfied after MRS commenced litigation, the circumstances surrounding that satisfaction are not consistent with an effort to avoid exposure to prejudgment interest.

In total, the record and the law support the magistrate's conclusion that MRS was not entitled to prejudgment interest where there was never a principal amount due and owing against Neumeier. The district court affirmed, holding that the magistrate did not abuse its discretion in reaching that conclusion. As such, we affirm the district court's decision on this issue.

**C. The District Court Did Not Err in Affirming the Determination of the Magistrate that Neumeier Was the Prevailing Party.**

Next, MRS contends that the district court erred in affirming the magistrate's determination that Neumeier was the prevailing party. MRS asserts that the district court's decision was erroneous because the magistrate's ruling was an abuse of discretion. MRS argues the magistrate should have found that MRS was the prevailing party because (1) it should have prevailed on summary judgment, (2) it should have been awarded prejudgment interest, and (3) some of the principal amount was recovered after the lawsuit was filed.

"A determination on prevailing parties is committed to the discretion of the trial court." *Crump v. Bromley*, 148 Idaho 172, 173, 219 P.3d 1188, 1189 (2009) (quoting *Shore v. Peterson*, 146 Idaho 903, 914, 204 P.3d 1114, 1125 (2009)). On appeal, the district court was required to

11

determine whether the magistrate (1) perceived the issue as one of discretion, (2) acted within the outer boundaries of this discretion and consistently within the applicable legal standards, and (3) reached its decision by an exercise of reason. *Id.* The district court engaged in this analysis and held that the magistrate did not abuse its discretion.

As discussed above, we hold that the summary judgment and prejudgment interest decisions in favor of Neumeier were proper because there was never an amount due and owing against him. That conclusion is not affected by the fact that the underlying bill was satisfied after MRS filed its complaint. Therefore, contrary to MRS's assertions, the record shows that the magistrate's determination as to the prevailing party was supported by substantial and competent evidence and well within its discretion. Therefore, the district court's decision affirming that of the magistrate is likewise affirmed.

## IV. ATTORNEY'S FEES

Both parties contend that they are entitled to attorney's fees on appeal pursuant to Idaho Code section 12-120 and Idaho Appellate Rules 40 and 41. In addition and in the alternative, Neumeier argues that he is entitled to fees under section 12-121 because MRS's appeal merely asks this Court to second guess the district court opinion. Under either section 12-120 or section 12-121, only the prevailing party is entitled to fees on appeal. *Clayson v. Zebe*, 153 Idaho 228, 236, 280 P.3d 731, 740 (2012). In light of the foregoing, Neumeier is the prevailing party, and therefore MRS is not entitled to fees on appeal.

Neumeier argues that if he is the prevailing party, he is entitled to fees under section 12–120(3) because the underlying lawsuit concerned payment on a contract for services. That statute provides, in relevant part, as follows:

> In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

I.C. § 12–120(3). In this case, MRS brought its action to recover on a bill arising from a contract for medical services. Thus, Neumeier is entitled to fees under section 12–120(3) as the prevailing party. Because section 12-120 provides a basis for an award of fees to Neumeier, we need not consider his alternative argument for the same pursuant to section 12-121.

12

## V.     CONCLUSION

We affirm the decision of the district court and award attorney's fees and costs on appeal to Neumeier.


Chief Justice BURDICK, and Justices JONES, HORTON and BEVAN CONCUR.