**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 49996**

MEDICAL RECOVERY SERVICES, ) 
LLC, an Idaho limited liability company, )
                                 )

      **Plaintiff-Appellant,**       )         **Boise, May 2024 Term**

                                   )

v.                                )        **Opinion filed**: December 19, 2024

                                   )

KATRINA MELANESE,        )         **Melanie Gagnepain, Clerk**

                                   )

      **Defendant-Respondent.**    )
_____)

Appeal from the District Court of the Seventh Judicial District of the State of Idaho. Bruce L. Pickett, District Judge.

The decision of the district court is <u>affirmed</u>.

Bryan D. Smith and Bryan N. Zollinger, Smith, Driscoll & Associates, PLLC, Idaho Falls, for Appellant. Bryan D. Smith argued.

Kelly H. Dove and Jennifer L. McBee, Snell & Wilmer, LLP, Las Vegas, Nevada, for Respondent. Robert C. Little argued.

_____

BEVAN, Chief Justice.

This appeal arises from a magistrate court decision denying the petition of Medical Recovery Services ("MRS"), a medical debt collector, to collect $460 from Katrina Melanese, now Katrina Sullivan ("Sullivan") for an emergency room ("ER") visit in September 2017. MRS argues that the magistrate and district courts erred by concluding that MRS could not collect because Sullivan's debt was not valid under this Court's holding in *Medical Recovery Services, LLC. v. Neumeier*, 163 Idaho 504, 415 P.3d 372 (2018). In *Neumeier*, we held that if an implied-in-fact contract for services between a doctor and a patient includes the condition precedent that the doctor will submit the bill to the patient's insurance before the patient is required to pay, then the patient does not incur a valid debt until the doctor submits the bill to the patient's insurance. *Id.* at 510, 415 P.3d at 378. MRS argues *Neumeier* does not apply here because the implied-in-fact contract between Intermountain Emergency Physicians group ("IEP") and Sullivan did not include the

required condition precedent. The magistrate court ruled in favor of Sullivan, and on intermediate appeal, the district court affirmed the magistrate court's dismissal of the case. We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  IEP provides ER services but does not collect patient insurance information.

This case began when Sullivan was treated by emergency room doctors at Eastern Idaho Regional Medical Center ("EIRMC" or "hospital"). IEP has a contract to provide ER services at EIRMC. As a contracted provider at EIRMC, IEP does not collect insurance information from its patients and instead focuses exclusively on treating patients. IEP does not give patients its phone number or other contact information, and it does not expect patients to contact it, even to provide insurance or billing information. As a result, IEP relies on EIRMC to gather and record patient insurance information, and then share that information with IEP. Although IEP does not directly collect patient insurance information, IEP's general practice is to bill patients' insurance before seeking payment from the patient.

When a patient comes to EIRMC's ER for treatment, a clinical receptionist employed by the hospital records the patient's name, birthdate, and reason for the visit and enters that information into Meditech, which is one of the hospital's electronic medical records systems. An IEP doctor then screens and triages the ER patient to address the patient's medical condition. After the doctor screens the patient, EIRMC usually has an ER registrar collect and confirm the patient's billing and insurance information. Meditech uses this information to produce a patient "face sheet," which includes the patient's name, arrival date, address, phone number, demographic information, and insurance and billing information.

If the ER registrar cannot collect and enter the patient's insurance and billing information right after screening and triage, another EIRMC employee collects that information before the hospital discharges the patient. That hospital employee enters the patient's insurance information into Meditech, and Meditech uploads that information into Artiva, an electronic database, the next day.[1] IEP automatically receives the patient's face sheet from Meditech within twenty-four hours of the patient's arrival at EIRMC's ER. IEP has access to Meditech, which allows IEP to confirm

---

[1] HCA Healthcare, EIRMC's parent company, can also collect and update patient insurance and billing information directly from patients into a system called Host, which also automatically uploads into Artiva.

its patients' current billing and insurance information if the information provided on the face sheet is not accurate.

### B. Sullivan's September 2017 ER visit.

Shortly before midnight on September 3, 2017, Sullivan went to EIRMC's ER to be treated for a gastrointestinal emergency. Before being seen by the ER doctor or admitted to the hospital, Sullivan tried to give her insurance information to the ER's clinical receptionist at the front desk. The receptionist told Sullivan that the hospital did not collect insurance information at the front desk, but that they would get that information from her after she was screened. Sullivan knew that it was important to give her insurance information to the hospital so that each provider could bill her insurer, in part, because she had extensive professional experience in medical billing. As Sullivan stated, "I've been working in doctors' offices since I was 12." Her experience included working for EIRMC as an ER registrar where her job included collecting and verifying patient information for face sheets.

Dr. Jerry Smedley, an ER doctor employed by IEP, screened Sullivan, determined within ten minutes that she needed an emergency colonoscopy and endoscopy, and called the gastroenterologist, Dr. Larry Evans. After being screened by Dr. Smedley, Sullivan was moved to triage and told she would be admitted to the fifth floor of the hospital for the procedures. Sullivan's then-spouse testified that at Sullivan's request, he gave her insurance card to the ER registrar while she was in triage. But Sullivan testified that she was in significant pain and does not remember if anyone from the hospital recorded her insurance information while she was in triage. Dr. Evans admitted Sullivan to the hospital at 1:07 a.m. and moved her from the ER to the fifth floor of the hospital for the emergency procedures.

The next morning, on September 4, Sullivan called Tall Tree Administrators, her health insurance administrator, and told them she had been admitted to the hospital. She made that call because her insurance company required that they be informed of hospital admissions within twenty-four hours. After calling Tall Tree, Sullivan asked a hospital nurse how she could give her insurance information to EIRMC because Sullivan was not sure that EIRMC had received that information from her spouse during triage. The nurse said Sullivan needed to speak with the ER registrar downstairs and gave her a number to call. Sullivan left a voicemail at the number she was given, and when the hospital (either the ER registrar or HCA's corporate offices) returned her call, Sullivan gave them her Tall Tree insurance information.

Sullivan underwent a colonoscopy and endoscopy and was discharged on the afternoon or evening of September 4, 2017. EIRMC's records show that by September 5, 2017, Sullivan's electronic patient file included her new insurance plan information. The new insurance information replaced the Blue Cross of Idaho and Medicaid insurance information that had been recorded in Sullivan's file when she was previously treated by EIRMC's ER in April 2014. The new insurance plan number matched the group number for Sullivan's Tall Tree insurance and included her insurance policy number.

A week after being discharged, Sullivan called EIRMC again to confirm that it had her correct insurance information on file. EIRMC told Sullivan that it had received her updated insurance information and had submitted her claim to Tall Tree.

IEP, however, did not have Sullivan's Tall Tree insurance information. Instead, IEP had Sullivan's outdated Blue Cross of Idaho and Medicaid insurance information from her April 2014 ER visit, which EIRMC had provided to IEP in Sullivan's face sheet. IEP submitted Sullivan's claim to Blue Cross and Medicaid, but both insurers denied the claim because Sullivan no longer had coverage with them. After Blue Cross and Medicaid denied coverage, IEP assigned Sullivan's bill to MRS for collection in December 2017. IEP assigned the bill without calling Sullivan or checking Meditech to verify her insurance information, even though Sullivan's phone number was listed on the face sheet IEP received from EIRMC, and IEP had access to Meditech.

Except for IEP, all the other healthcare providers who treated Sullivan for her September 2017 ER visit and hospitalization submitted claims to and were paid by Tall Tree. Those providers include EIRMC, which submitted its claim to Tall Tree on September 13, 2017, and was paid on October 2, 2017. Intermountain Anesthesia, which, like IEP, initially billed Blue Cross and Medicaid based on the outdated insurance information it received from EIRMC on Sullivan's face sheet, was also paid by Tall Tree. After Blue Cross and Medicaid denied the claim, Intermountain Anesthesia called Sullivan at the phone number on the face sheet, Sullivan gave Intermountain Anesthesia her Tall Tree insurance information, and Intermountain Anesthesia billed and was paid by Tall Tree.

Three months after her September 2017 ER visit, Sullivan was again treated by IEP at EIRMC's ER in December 2017. She provided her Tall Tree insurance information, which IEP billed and Tall Tree paid.

Between August 2018 and June 2019, MRS mailed Sullivan ten notices to her then valid

address. Only the first of these notices was returned to MRS as undeliverable. Sullivan stated that she never received any of these notices, possibly because the notices were mailed to her during a period when, after not receiving birthday cards sent by her mother to her children, she suspected and reported potential mail theft to the United States Postal Service ("USPS"). The USPS opened a case, confirmed that a person on probation had been stealing Sullivan's mail, and handled the matter through the suspect's probation officer.

In May 2019, Sullivan received and returned a voicemail from MRS who informed her she owed a balance for the September 2017 ER visit. Sullivan maintains that this was the first time she became aware that IEP had not been paid by her insurance for her September 2017 ER visit. After MRS sued Sullivan, but before she hired counsel, Sullivan called MRS and asked them to bill her insurance for the September 2017 ER visit. MRS told Sullivan it had been too long and declined to take her insurance information.

### C. Procedural Background

In June 2019, MRS sued Sullivan seeking to recover around $2,500. That amount was the total of IEP's $1,225 bill for medical services, $229 in prejudgment interest, $170 court filing fee, and $480 in attorney fees. MRS later amended its complaint to: (1) reduce IEP's bill for medical services from $1,200 to about $460; (2) add claims for breach of express and implied contracts; and (3) include a request for attorney fees. Sullivan answered the complaint and raised the affirmative defense that MRS's claims were barred by failures of conditions precedent to Sullivan's obligation to perform under the contract.

MRS subsequently sought partial summary judgment on its implied-in-fact contract claim. Sullivan opposed the motion, arguing again that under *Neumeier*, MRS's implied-in-fact contract claim should be dismissed for failure of an implied condition precedent because MRS's predecessor in interest, IEP, had not billed Sullivan's Tall Tree insurance before seeking payment from her directly.

The magistrate court heard arguments on the summary judgment motion and found that there were genuine issues of material fact on: (1) the existence of an implied condition precedent; and if so, (2) whether IEP had satisfied it. These issues were addressed in a bench trial held January 18 and February 4, 2021. In its April 20, 2021, Findings of Fact and Conclusions of Law, the magistrate court found that the conduct of IEP and Sullivan created an implied condition precedent where IEP agreed to bill the insurance Sullivan provided to the hospital and that IEP had failed to

satisfy that condition. Therefore, the court concluded that MRS was barred from any recovery based on *Neumeier*. Accordingly, the magistrate found that the debt was not valid and dismissed MRS's claims with prejudice.

MRS appealed the magistrate court's decision to the district court. After receiving briefing and hearing arguments, the district court issued a memorandum decision denying MRS's appeal and affirming the decision of the magistrate court. MRS timely appealed to this Court.

## II. ISSUES ON APPEAL

1. Was the arrangement between IEP and Sullivan an implied-in-fact contract, as in *Neumeier*?

2. Were the district court's conclusions that a condition precedent existed, and that IEP failed to satisfy it, supported by substantial and competent evidence from the magistrate court?

3. Is either party entitled to attorney fees and costs on appeal?

## III. STANDARDS OF REVIEW

"In reviewing the decision of a district court acting in its appellate capacity, the standard of review requires that we review the district court's decision to determine whether its decision is supported by the findings of fact and legal conclusions of the magistrate court:

> Th[is Court] reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure."

*Farms, LLC v. Isom*, 169 Idaho 188, 190, 493 P.3d 947, 949 (2021) (citing *Ellis v. Ellis*, 167 Idaho 1, 6–7, 467 P.3d 365, 370–71 (2020)). "This Court does not review the magistrate court's decision but is "procedurally bound to affirm or reverse the decisions of the district court." *Id*. (citing *Ellis*, 167 Idaho at 7, 467 P.3d at 371).

## IV. ANALYSIS

The question we must answer is whether our holding in *Neumeier* applies to the facts of this case. As described above, we held in *Neumeier* that if an implied-in-fact contract for services between a doctor and a patient includes a condition precedent that the doctor will submit the bill to the patient's insurance before the patient is required to pay, then the doctor does not have a valid claim for payment until the doctor submits the bill to the patient's insurance. *Neumeier*, 163 Idaho at 510, 415 P.3d at 379. A summary of *Neumeier* explains the factual underpinning of this rule.

**A.** ***Medical Recovery Services, LLC. v. Neumeier*, 163 Idaho 504, 415 P.3d 372 (2018).**

6

In *Neumeier*, Jared Neumeier was treated by Dr. Eric Baird and gave his insurance information to Dr. Baird's office. *Neumeier*, 163 Idaho at 506, 415 P.3d at 374. Neumeier left Dr. Baird's office expecting that the bill would be submitted to his health insurer. *Id.* But Dr. Baird's office did not submit the claim to insurance, and instead sent Neumeier a bill in the mail. *Id.* Dr. Baird's office sent the bill to an incorrect address, so Neumeier never received it. *Id.* Receiving no response from Neumeier, Dr. Baird's office assigned the bill to MRS[2] for collection. *Id.* MRS tried to contact Neumeier at the same address Dr. Baird's office had used, and predictably, Neumeier did not receive any of those notices. *Id.* During this period, Neumeier was treated by Dr. Baird in unrelated medical appointments, and those claims were submitted by Dr. Baird's office and paid by Neumeier's insurance without incident. *Id.*

After about a year, MRS apparently became aware of Neumeier's correct address and mailed a notice to that location, which Neumeier received. *Id.* Believing it was a scam, Neumeier immediately contacted Dr. Baird's office and learned that the bill had never been submitted to his insurance and had been assigned to MRS for collection. *Id.* Neumeier then called MRS's legal counsel, who had filed a complaint against him the previous day and was informed he owed about $1,800 (approximately twice the principal balance). *Id.*

After Neumeier contacted Dr. Baird's office about the MRS notice, Dr. Baird's office submitted the bill to Neumeier's insurance. *Id.* Neumeier's insurance paid all but the $42 co-pay, which Dr. Baird's office waived. *Id.* Even though the bill had been satisfied, MRS refused Neumeier's request to dismiss the complaint. *Id.* MRS asked the magistrate court to grant it summary judgment for $0 and an award for prejudgment interest. *Id.* The magistrate court denied MRS's request, ruled for Neumeier, and awarded Neumeier attorney fees and costs. On appeal to the district court, the magistrate court's decision was affirmed, and MRS appealed to this Court. *Id.*

This Court determined that the "dispositive question was whether the debt underlying MRS' claim was valid and noted that both the magistrate and district courts concluded there was never an amount due and owing against Neumeier, so the debt was not valid. *Id.* at 163 Idaho at 507, 415 P.3d at 375. This Court affirmed the district court, reasoning that the conduct of the parties confirmed that there was an implied-in-fact contract between the parties that Dr. Baird would provide medical services and Neumeier promised to pay for those services. *Id.* at 508, 415 P.3d at

---

[2] This is the same MRS who brought the instant appeal against Sullivan.

376.

Critically, this Court also held that Neumeier's promise to pay was subject to an implied condition precedent, which was that Dr. Baird's office would submit his claim to insurance before billing him. *Id.* at 509, 415 P.3d at 377. This Court reviewed the conduct of the parties to determine whether an implied condition precedent existed:

> Taken as a whole, a clear conclusion emerges from the following undisputed facts that the contracting parties' [sic] intended for a condition to exist: In late 2012, Neumeier received medical services from Dr. Baird, shared his insurance information with Dr. Baird's office, and left with the expectation that the office would submit the corresponding bill to his insurer pursuant to the information he provided. From there, the office did not submit the bill to his insurer, but instead pursued payment directly from him by sending mail to his attention at an incorrect address. Given this error, Neumeier did not receive any of the mail, nor did he receive any other communication concerning the relevant bill from Dr. Baird's office following his visit. During this time period Neumeier received other unrelated medical services from Dr. Baird, which resulted in a separate bill that was thereafter submitted to Neumeier's insurer by the office. Two and a half years after his initial visit, Neumeier received the notice letter from MRS. In response, he returned to Dr. Baird's office to investigate the matter, at which point the office discovered that it had never submitted the bill to Neumeier's insurer. From there, the office submitted the bill to Neumeier's insurer and received payment after a contractual discount. Dr. Baird waived the remaining copayment balance.

*Id.* at 509, 415 P.3d at 377 (2018). This Court also noted that the record did not indicate that there was a patient sign-in form or office policy stating that Dr. Baird's office would only bill insurance as a courtesy. *Id.* This Court concluded:

> Instead, without a factual dispute, the conclusion that follows from the contracting parties' course of conduct is that they intended for the bill to be submitted to Neumeier's insurer before he was required to pay an amount considered due and owing. In other words, Dr. Baird and Neumeier intended for a condition precedent to exist under their contract.

*Id.* at 510, 415 P.3d at 378.

Because Dr. Baird's office had not satisfied the condition precedent to bill Neumeier's insurance before seeking payment from Neumeier, Neumeier did not owe a valid debt to Dr. Baird, and therefore MRS, as Dr. Baird's assignee, could not collect that debt. *Id.* But this Court cautioned:

> To be clear, our decision here should not be read as creating a blanket rule that bills must be submitted to an insurer before payment is due and owing. Rather, this

8

decision is grounded in the record and facts specific to this case. The conditional element is a product not only of the evidence of these particular contracting parties' conduct, but also the lack of any evidence suggesting another conclusion should apply.

*Id.*

For our holding in *Neumeier* to apply to Sullivan's case, we must determine whether: (1) an implied-in-fact contract for services existed between IEP and Sullivan; and (2) whether that implied-in-fact contract included a condition precedent that required IEP to submit Sullivan's claim to her insurance before billing her directly. As we will explain, we answer both questions in the affirmative.

### B. The arrangement between IEP and Sullivan was an implied-in-fact contract, just as in *Neumeier*.

In *Neumeier*, we found that "[t]he record does not provide an express written or oral contract between Dr. Baird and Neumeier; however, the evidence showing the nature of the arrangement between the parties establishes that there existed an implied-in-fact contract." *Neumeier*, 163 Idaho at 508, 415 P.3d at 376 (citing *Kennedy v. Forest*, 129 Idaho 584, 587, 930 P.2d 1026, 1029 (1997)). "A contract implied-in-fact is a true contract whose existence and terms are inferred from the conduct of the parties. Such a contract is grounded in the parties' agreement and tacit understanding." *Id.*

Here, there is no dispute that the conduct of the parties shows that IEP and Sullivan entered into an implied-in-fact contract for medical services. The contract is the basis of MRS's claim against Sullivan, and Sullivan testified that she expected to pay for the medical care she received. Under that contract, Dr. Smedley, the IEP doctor who assessed Sullivan at EIRMC's ER, promised to provide medical services to Sullivan in exchange for Sullivan's promise to pay for those services. This dispute arises from Sullivan's promise to pay. Therefore, we hold that an implied-in-fact contract for services arose between IEP and Sullivan.

### C. The district court correctly concluded that a condition precedent existed and that IEP failed to satisfy it.

Next, we turn to the crux of this matter, which is determining whether the district court erred in affirming the magistrate court's conclusion that a condition precedent existed between IEP and Sullivan, and that IEP did not satisfy that condition. MRS makes three main arguments: (1) that the federal Emergency Medical Treatment and Labor Act ("EMTALA") makes the condition precedent in *Neumeier* unworkable in ER settings; (2) that the magistrate's findings on a condition precedent

were not supported by substantial and competent evidence; and (3) that no condition precedent arose because EIRMC was not IEP's agent.

### 1. *EMTALA does not prohibit applying Neumeier to the facts of Sullivan's case.*

We first consider MRS's assertion that the condition precedent in *Neumeier* should not be found to exist in emergency room settings because EMTALA prevents ER providers from asking about an ER patient's ability to pay, including whether the patient has health insurance. MRS explains that IEP's policy of refusing to take ER patient insurance information stems from concern about EMTALA compliance. We disagree with MRS's position.

Contrary to MRS's assertion, federal regulations implementing EMTALA permit "asking whether an individual is insured and, if so, what that insurance is, *as long as this inquiry does not delay screening or treatment*." 64 Fed. Reg. 61355-03 (Nov. 10, 1999) (emphasis added); *see* 42 C.F.R. § 489.24(d)(iv). MRS conceded at oral argument before the district court that it "was IEP's policy and not a legal requirement" that "prevented IEP from discussing insurance with [Sullivan] when she turned up to the emergency room with a medical emergency." On reply in this appeal, MRS again clarified that "no dispute exists" that EMTALA allows providers to ask about insurance if it does not delay treatment but explained that IEP's policy is designed to avoid any potential EMTALA issues and protect its contract with EIRMC. Because it is IEP's policy, rather than a statutory requirement of EMTALA, that prevents IEP's providers from asking ER patients about insurance, we hold that EMTALA does not prevent the condition precedent in *Neumeier* from existing in emergency room settings.

### 2. *The magistrate court's finding that a condition precedent existed is supported by substantial and competent evidence.*

Next, we must decide whether the magistrate court's finding that IEP and Sullivan intended to create a condition precedent in which IEP promised to submit Sullivan's claim to insurance before billing her directly is supported by substantial and competent evidence. The magistrate court found (as the finder of fact here) that the conduct of the parties revealed their mutual intent to create the condition precedent. The magistrate court based its finding on IEP's reliance on EIRMC to collect insurance information and IEP's attempt to bill Sullivan's insurance. Thus, we review the magistrate court's factual findings to determine whether its conclusion that a condition precedent existed is supported by substantial and competent evidence considering the relationship between IEP and EIRMC, and the course of conduct between IEP and Sullivan. We hold that it is.

10

"A condition precedent is an event not certain to occur, but which must occur, before performance under a contract becomes due." *Neumeier*, 163 Idaho at 508, 415 P.3d at 376 (citing *Weisel v. Beaver Springs Owners Ass'n*, 152 Idaho 519, 528, 272 P.3d 491, 500 (2012)). "A condition precedent may be expressed in the parties' agreement, implied in fact from the conduct of the parties, or implied in law (constructive) where the courts 'construct' a condition for the purpose of attaining a just result." *Id.* That said, "[a]s a general rule, conditions precedent are not favored by the courts." *Neumeier*, 163 Idaho at 509, 415 P.3d at 377 (citing *Steiner v. Ziegler Tamura Ltd.*, 138 Idaho 238, 242, 61 P.3d 595, 599 (2002)).

"Because implied-in-fact conditions are, in form, express conditions, they derive from the contracting parties' intentions." *Neumeier*, 163 Idaho at 509, 415 P.3d at 377 (citing *World Wide Lease, Inc. v. Woodworth*, 111 Idaho 880, 888, 728 P.2d 769, 777 (Ct. App. 1986)). "Thus, in examining their existence, the court endeavors to determine the intent of the parties." *Id.* "If the parties' intent cannot be determined from the plain language of the contract, interpretation of the contract for the existence of a condition precedent is a question of fact." *Neumeier*, 163 Idaho at 509, 415 P.3d at 377 (citing *Weisel v. Beaver Springs Owners Ass'n*, 152 Idaho 519, 528 & n.3, 272 P.3d 491, 500 & n.3 (2012)).

If a condition precedent is found to exist, this Court has described the requirement to satisfy that condition as follows:

> When the payment of a debt for services performed is conditioned on the happening of some event, which is under the control of the obligor, the event must happen or a reasonable time must elapse before payment becomes due, and *the obligor must make some reasonable effort to cause the event to happen.*

*Schlueter v. Nelson*, 74 Idaho 396, 399, 263 P.2d 386, 387 (1953) (emphasis added); *see also Wade Baker & Sons Farms v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints*, 136 Idaho 922, 926, 42 P.3d 715, 719 (Ct. App. 2002). The Court of Appeals has correctly recognized:

> These longstanding principles governing application of conditions precedent in contract law are consistent with, and tend to merge into, the covenant of good faith and fair dealing which, under Idaho law, is implied in every contract. *See [e.g.] Crea v. FMC Corp.*, 135 Idaho 175, 179, 16 P.3d 272, 276 (2000) [citations omitted]. The implied covenant requires that the parties perform in good faith the obligations imposed by their agreement, and a violation of the covenant occurs when the conduct of one party violates, nullifies or significantly impairs any benefit

11

or right conferred on the other party by the contract. *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 750, 9 P.3d 1204, 1216 (2000); *Bliss Valley Foods*, 121 Idaho at 289, 824 P.2d at 864. Thus, the implied covenant places a good faith obligation on each party to take reasonable measures to ensure that the other party obtains the benefits of the agreement. *George v. Univ. of Idaho*, 121 Idaho 30, 37, 822 P.2d 549, 556 (Ct. App. 1991).

*Wade Baker*, 136 Idaho at 926, 42 P.3d at 719. Stated succinctly, if a condition precedent is under the control of one party to a contract, there is generally an implied promise that the party will "make some reasonable effort to cause the event to happen." *Johnson v. Lambros*, 143 Idaho 468, 475, 147 P.3d 100, 107 (Ct. App. 2006) (citing *Schlueter v. Nelson*, 74 Idaho 396, 399, 263 P.2d 386, 387 (1953)).

Contrary to MRS's assertion, the facts in *Neumeier* showing that a condition precedent existed are similar to the facts in Sullivan's case. In both cases, the patient entered into an implied-in-fact contract for medical services, received those services, provided insurance information, expected the doctor to bill their insurance, but the doctor did not bill their insurance. The primary difference is that in *Neumeier*, the patient gave his insurance information to the doctor via the doctor's receptionist, whereas Sullivan gave her insurance information to an EIRMC employee, rather than to IEP directly. MRS also argues that Sullivan provided her insurance information to EIRMC *after* IEP had provided the contracted-for medical services, rather than at the time she received those services. Because IEP had already satisfied its contractual obligation to provide medical services, MRS asserts that Sullivan cannot insert a new term—the condition precedent—into that contract by providing her insurance information to EIRMC either in triage a few minutes after receiving IEP medical services or the next morning.

As explained above, the magistrate court found, based on substantial and competent evidence in the record, that IEP's conduct allowed EIRMC to collect Sulivan's insurance on behalf of IEP. Thus, Sullivan's providing her information to EIRMC rather than IEP is of no moment. We are similarly unpersuaded that Sullivan's providing her insurance information to EIRMC a few minutes after or the morning after IEP provided the contracted-for medical care bars the creation of the condition precedent. Sullivan, despite facing serious medical difficulties, provided her information to EIRMC in every way she possibly could, and in compliance with EIRMC's procedures.

12

We now review the evidence that shows the parties intended to create a condition precedent that IEP would submit a claim to Sullivan's insurance before billing her directly. Sullivan testified that her professional experience and previous treatment by IEP in EIRMC's ER created the expectation that giving her insurance information to EIRMC would mean that its contracted providers, including IEP, would submit her claim to her insurance before billing her directly. The record shows that Sullivan made four attempts (before, during, and after receiving medical services) to provide her insurance information to EIRMC. As in *Neumeier*, the record also shows—and MRS does not dispute—that IEP never informed Sullivan either in writing, with a sign in the ER, or orally, that IEP would only bill her insurance as a courtesy. *See also Medical Recovery Services, LLC v. Strawn*, 156 Idaho 153, 154, 321 P.3d 703, 704 (2014) (default judgment against patient affirmed, based in part on patient sign-in form that the provider will submit claims to insurance "only as a courtesy."). From this, we conclude that Sullivan's actions demonstrate that she intended to create a condition precedent.

MRS claims that IEP never intended to create a condition precedent because IEP never intended to bill Sullivan's insurance. This argument is belied by the record, and again, by the magistrate court's findings. First, IEP admits it billed Sullivan's expired Blue Cross and Medicaid insurance based on the outdated face sheet information. That alone demonstrates IEP's intent to bill Sullivan's insurance and fulfill the condition precedent. Second, Dr. Anderson, a partner at IEP, testified at trial that IEP's general practice is to bill patient insurance before seeking payment from the patient. But Dr. Anderson also testified that IEP did not have its own method for collecting patient insurance information. To adhere to its general practice, IEP relied on EIRMC to collect that information. IEP's specific actions in this case and its admitted practice belie MRS's argument on appeal and demonstrate that IEP intended to bill Sullivan's insurance before seeking payment directly from her.

Recall that in *Neumeier*, Neumeier gave his insurance information to Dr. Baird's office and "left with the expectation that the office would submit the corresponding bill to his insurer[.]" *Neumeier*, 163 Idaho 504, 509, 415 P.3d 372, 377 (2018). Despite this expectation, Dr. Baird sent the bill directly to Neumeier. *Id.* The bill was sent to an incorrect address, thus Neumeier did not receive the bill. *Id.* On subsequent visits, Dr. Baird submitted Neumeier's bills to his insurer for payment. *Id.* After two years, Neumeier's original bill was assigned to MRS for collection. *Id.* Neumeier returned to Dr. Baird, who then submitted the bill to Neumeier's insurance. *Id.* From this,

13

the *Neumeier* Court concluded that the parties' "course of conduct" indicated that the parties intended for the bill to be submitted to insurance before Neumeier had an obligation to pay. *Id.* at 510, 415 P.3d at 378.

Sullivan's case is even stronger than *Neumeier*. Instead of sending Sullivan the bill, as happened in *Neumeier*, IEP submitted the bill to Sullivan's insurance. It so happened that IEP used outdated insurance information. On a subsequent visit, IEP submitted Sullivan's bills to her correct insurance just as Dr. Baird did in *Neumeier*. In *Neumeier*, the Court found a condition precedent—to bill insurance first—arose from a course of conduct where the treating physician originally sought payment from the patient. In this case, IEP originally sought payment from Sullivan's insurance. Other treating providers either 1) submitted Sullivan's bill to Tall Tree or 2) sought correct insurance information from Sullivan after payment was denied.

Under these circumstances, we conclude that there is substantial and competent evidence in the record supporting the magistrate court's finding that a condition precedent existed in which IEP promised to bill Sullivan's insurance when she received services and provided her insurance information. Under that promise, we conclude that Sullivan did all that was required of her by ensuring that EIRMC had her current insurance information. IEP failed to meet its obligation to make reasonable efforts to fulfill the condition precedent, despite having Sullivan's phone number and access to Meditech, which it could have used to obtain Sullivan's valid insurance information. Unlike the other contracted providers who also received outdated insurance information on Sullivan's face sheet, IEP chose not to make any attempt to acquire updated information. Thus, we hold that IEP failed to make reasonable efforts to satisfy the condition precedent.

In sum, we hold that IEP created the condition precedent as found in *Neumeier*, requiring it to bill Sullivan's insurance before seeking payment from her directly. IEP failed to make reasonable efforts to satisfy that condition precedent. Accordingly, we affirm the district court.

   3. *Whether EIRMC was IEP's agent is irrelevant because the parties' course of conduct establishes a condition precedent.*

Finally, MRS argues that no condition precedent arose because Sullivan failed to give her insurance information directly to IEP, and instead gave it to EIRMC. In *Neumeier*, MRS points out that Neumeier gave his insurance information directly to the doctor's receptionist when he received medical services at the doctor's office. MRS argues that EIRMC was not IEP's agent because IEP did not grant EIRMC actual or apparent authority to collect its patient insurance information. MRS

14

asserts that the hallmark of agency is control, and because IEP had no power to control EIRMC's practices, no agency relationship exists between them.

We note that MRS's allegation that no condition precedent arose because Sullivan failed to give her information to IEP implicitly assumes that Sullivan *could have* given her insurance information to IEP. But Dr. Joseph Anderson, a partner at IEP, testified at trial that the only IEP employees in the EIRMC ER are doctors, physician assistants, and a nurse practitioner, none of whom take patient billing information, which is why EIRMC staff gathers patient insurance information. Dr. Anderson added that even outside the ER, IEP does not collect insurance information directly from patients. He also testified that IEP does not provide its contact information to any of its patients and does not expect or anticipate that its patients will contact IEP to provide insurance information. With that context, MRS's allegation that Sullivan could have given her insurance information directly to IEP falls flat.

"Whether facts sufficient to constitute an agency relationship exist is indeed a question of fact for the [trier of fact], however, whether a given set of facts are sufficient to constitute an agency relationship is a question of law appropriate for this Court's consideration." *Eagle Rock Timber*, 172 Idaho at ___, 531 P.3d at 493–94 (citing *Forbush v. Sagecrest Multi Fam. Prop. Owners' Ass'n, Inc.*, 162 Idaho 317, 330, 396 P.3d 1199, 1212 (2017)). Neither the magistrate court nor the district court found that an agency relationship existed. The district court concluded that whether EIRMC was IEP's agent was irrelevant because the parties' course of conduct supported the finding of a condition precedent.

We agree with the district court that the agency issue is irrelevant. As we have explained, the condition precedent was that IEP would bill Sullivan's insurance before seeking payment from her. As demonstrated by the other providers who correctly billed Tall Tree, Sullivan did all she was obligated to do by providing EIRMC with correct insurance information. By failing to submit Sullivan's bill to the insurance provided, IEP did not satisfy the condition precedent. Any agency relationship between EIRMC and IEP does not alter IEP's obligation to make reasonable efforts to bill Sullivan's insurance before seeking payment from her directly.

### D. Sullivan is entitled to attorney fees and costs on appeal.

Both MRS and Sullivan argue they are entitled to attorney fees and costs on appeal. Idaho Code section 12-120(3) provides that the prevailing party is entitled to attorney fees in a civil action to recover on a contract for services. Idaho Appellate Rule 40(a) states that "costs shall be allowed

15

as a matter of course to the prevailing party unless otherwise provided by law or order of the Court." Because Sullivan is the prevailing party on appeal, she is entitled to attorney fees and costs.

## V.     CONCLUSION

For the reasons explained above, this Court affirms the district court's decision. Sullivan is awarded attorney fees and costs on appeal.

Justices BRODY, MOELLER, ZAHN, and MEYER concur.